**DOCTOR'S ASSOCIATES, INC., Plaintiff,**

v.

**Emily DISTAJO, et al., Defendants.**

**Civil No. 3:94CV349 (PCD).**

United States District Court, D. Connecticut.

Feb. 14, 1996.

Order Reconsidering Decision March 14, 1996

---

William J. Doyle, Edward Wood Dunham, Mark Richard Kravitz, Kevin M. Kennedy, Wiggin & Dana, New Haven, CT, for Plaintiff.

Nicholas E. Wocl, Tooher & Puzzuoli, Stamford, CT, David M. Duree, Robert L. Carter, Reinert, Duree & Crane, St. Louis, MO, for Defendants Emily Distajo, Renato Distajo, Constantino Lamando, and Milo Lamando.

Nicholas E. Wocl, Tooher & Puzzuoli, Stamford, CT, for Defendants Jose Alberto Brenes, Alvaro Guerrero, Maria T. Guerrero, Wesam S. Youmaran, Linda Youmaran, Julie Shino, Johnson Shino, Albert Yonan, Leylah Yonan, Louis Loenneke, Mary Ann Bookout, and John S. Papaleo.

Edward E. Angwin, Birmingham, AL, for Defendants John A. McCrary, Paul Riise, and Melissa Riise.

David M. Duree, Reinert, Duree & Crane, St. Louis, MO, for Defendants Ronald Rothmund, Patricia Rothmund, Sandra Bickel and Raymond Bickel.

### RULING ON MOTION TO FOREGO TRIAL AND GRANT JUDGMENT AS A MATTER OF LAW

DORSEY, Chief Judge.

Plaintiff Doctor's Associates, Inc. ("DAI") is the national franchisor of Subway sandwich shops, and defendants are Subway franchisees. The parties entered into standard franchise agreements, which required arbitration of all contractual disputes in Bridgeport, Connecticut, under Connecticut law. When contractual disputes did arise, the franchisees sought judgments against DAI in numerous state courts around the country. DAI has petitioned this court to compel arbitration of the franchise disputes pursuant to section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4. The franchisees have opposed the petition on grounds including fraudulent inducement and waiver of the right to arbitration, which issues were remanded by the Second Circuit for determination by this court. *See Doctor's Assocs., Inc. v. Distajo,* 66 F.3d 438, 458 (2d Cir.1995). A trial on the franchisees' arbitration defenses is scheduled to begin on February 20, 1996.

### I. DISCUSSION

*1. Treating Petition to Compel Arbitration as Motion for Summary Judgment*

■ DAI moves for the court to forego trial and render judgment as a matter of law. In support of this request, DAI relies principally on two Second Circuit cases construing FAA § 4: *Manning v. Energy Conversion Devices, Inc.,* 833 F.2d 1096 (2d Cir.1987), and *Oppenheimer & Company, Inc. v. Neidhardt,* 56 F.3d 352 (2d Cir.1995). In *Manning,* the Second Circuit affirmed a district court's order compelling arbitration and held that there was no need for an evidentiary hearing on a fraudulent inducement defense

when no affidavits had been offered in support thereof. 833 F.2d at 1103. "A party resisting arbitration ... must submit sufficient evidentiary facts in support of [its] claim in order to precipitate the trial contemplated by 9 U.S.C. § 4." *Id.* Moreover, "[a]rbitration is intended to be a process for the swift resolution of disputes, and parties endeavoring to resist arbitration must alert district courts promptly and fully to whatever claims they may have in opposition to arbitration and the evidentiary basis of such claims." *Id.*

In *Oppenheimer,* the Second Circuit affirmed a district court's order compelling arbitration and held that trial was unnecessary when no evidence had been offered in support of defendants' objection to arbitration. 56 F.3d at 357–58. "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Id.* at 358.

*Manning* and *Oppenheimer* suggest that § 4 petitions to compel arbitration should be treated as motions for summary judgment. Such a procedure is also suggested by decisions from other jurisdictions which have explicitly applied summary judgment principles to § 4 petitions. *See Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 n. 9 (3d Cir.1980); *Matterhorn, Inc. v. NCR Corp.,* 727 F.2d 629, 632 (7th Cir.1984). Accordingly, DAI's petition will be treated as a motion for summary judgment on the issues that remain to be adjudicated: the franchisees' defenses of waiver and fraudulent inducement, and the demand for abstention as to Raymond and Sandra Bickel.

### 2. Waiver of Right to Arbitration

■ The franchisees argue that DAI has waived its right to arbitration by pursuing eviction lawsuits against them through alter ego leasing companies. The Second Circuit has noted that the franchisees' waiver defense requires this court to determine three issues. *See Doctor's Assocs., Inc.,* 66 F.3d at 456–57. The first two issues do not require trial because they are not in dispute: DAI

has conceded that the leasing companies were its alter egos and that the eviction proceedings were based on the cross-default provisions of the franchisees' subleases. *See Saturday Evening Post Co. v. Rumbleseat Press, Inc.,* 816 F.2d 1191, 1196 (7th Cir. 1987) ("If the arbitrability of the parties' dispute involves no questions or only legal questions, a jury trial would be pointless because its outcome could not affect the judge's decision on whether to order arbitration."). The third issue—whether the franchisees suffered prejudice from the eviction actions—also does not seem to involve any material factual disputes. *See, e.g., Cotton v. Slone,* 4 F.3d 176, 179 (2d Cir.1993) ("Sufficient prejudice to infer waiver has been found when a party seeking to compel arbitration engages in discovery procedures not available in arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense.") (citations omitted). Nevertheless, the court will not decide this issue as a matter of law until the parties have briefed it according to the schedule specified below.

### 3. Fraudulent Inducement

■ The franchisees argue that the franchise agreements were fraudulently induced because: (1) DAI misrepresented that arbitration is a condition precedent to litigation of franchise disputes, and (2) DAI failed to disclose that it regularly pursues eviction lawsuits through the alter ego leasing companies without first engaging in arbitration. The franchisees have not produced sufficient evidence to avoid summary judgment on the issue of fraudulent inducement. The only evidence suggesting that the alleged misrepresentation and nondisclosure actually occurred is contained in the February 12, 1996 affidavit of the franchisees' attorney, David M. Duree. (*See* Duree Aff. 4.) Duree's recitation of what DAI did and did not say in discussions with the franchisees would be inadmissible at trial as hearsay. *See* FED. R.EVID. 802. Inadmissible evidence may not be considered in connection with a motion for summary judgment. *See, e.g., Fowler v. Smith,* 68 F.3d 124, 126 (5th Cir.1995). Ac-

cordingly, DAI is entitled to judgment, as a matter of law, on the franchisees' defense of fraudulent inducement.

### 4. *Abstention as to Raymond and Sandra Bickel*

The franchisees Raymond and Sandra Bickel argue that this court should abstain from exercising jurisdiction over DAI's claims against them in light of a related decision in Illinois state court. *See Bickel v. Subway Sandwich Shops, Inc.*, No. 94–L–1428, slip op. at 2 (Cir.Ct., 3d J.Cir., Madison County, Ill. Dec. 5, 1995). This issue does not appear to involve any material factual disputes. Nevertheless, the court will not decide this issue as a matter of law until the parties have briefed it according to the schedule specified below.

### 5. *Franchisees' Right to Jury Trial*

█ The franchisees argue that judgment as a matter of law deprives them of their right to jury trial. This claim is without merit. It is well-established that absent genuine issues of material fact, summary judgment decides only questions of law and does not deny the losing party's right to jury trial. *See, e.g., Benjamin v. Traffic Executive Ass'n E. R.R.*, 869 F.2d 107, 115 n. 11 (2d Cir.1989).

## II. CONCLUSION

DAI's motion to forego trial and render judgment as a matter of law (docs. 181–1, 181–2) is granted. The trial scheduled to begin on February 20, 1996 is canceled. DAI is granted judgment, as a matter of law, on the franchisees' defense of fraudulent inducement. The court will decide the remaining issues as a matter of law after the parties brief the aforementioned issues of prejudice and abstention. The franchisees shall file a memorandum of law addressing these issues on or before February 21, 1996, and DAI

---

**1.** Defendants have blithely assumed that their jury demand was sufficient by itself, although they should have known otherwise from a related state court decision. *See Suslovic v. Subway Real Estate Corporation*, No. 1768 of 1993, slip op. at 3 (Ct. of Common Pleas, Beaver County,

shall file a memorandum in response on or before February 28, 1996.

SO ORDERED.

## RULING ON DEFENDANTS' MOTION TO SET ASIDE FEBRUARY 14, 1996 ORDER AND SCHEDULE TRIAL

Plaintiff Doctor's Associates, Inc. ("DAI") is the national franchisor of Subway sandwich shops, and defendants are Subway franchisees. The parties entered into standard franchise agreements, which required arbitration of all contractual disputes in Bridgeport, Connecticut. When contractual disputes did arise, the franchisees sought judgments against DAI in numerous state courts around the country.

DAI has petitioned this court to compel arbitration of the franchise disputes pursuant to section 4 of the Federal Arbitration Act, 9 U.S.C. § 4. As defenses to arbitration, the franchisees have argued that DAI fraudulently induced their agreement to arbitrate and waived its right to arbitration. These issues were remanded by the Second Circuit for determination by this court. *See Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 458 (2d Cir.1995).

After the franchisees demanded a jury trial, and trial was scheduled to begin on February 20, 1996, DAI sought to forego trial and obtain judgment as a matter of law. On February 14, 1996, DAI's motion was granted: trial was canceled, DAI was granted judgment as a matter of law on the issue of fraud, and the court agreed to decide the remaining issues, as a matter of law, after further briefing. The franchisees move to set aside that ruling and reschedule trial.

## I. DISCUSSION

### A. *Reconsideration of the Franchisees' Demand for a Jury Trial*

█ As suggested in the February 14 ruling, the franchisees cannot force a jury trial simply by demanding one.[1] "A party resist-

---

Pa. Jan. 17, 1996) ("Plaintiffs have made no averments of fact to support the conclusory allegation of fraud ... The trial court is under no obligation to schedule a hearing in order to permit plaintiffs to prove that which they have not alleged.") (citation omitted).

ing arbitration ... must submit sufficient evidentiary facts in support of [his] claim to precipitate the trial contemplated by 9 U.S.C. § 4." *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir.1987). He must show that, if proven, his allegations would relieve any obligation to arbitrate, and he must produce some evidence to substantiate his factual allegations. *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir.1992), *cert. denied sub nom. Dillard v. Sec. Pac. Corp.*, 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993). Furthermore, he must do so "promptly." *Manning*, 833 F.2d at 1103.

■ Until affidavits were filed in recent weeks, the franchisees offered no substantiation of their fraud and waiver claims. They insist that they were not afforded sufficient time to come forward with evidence, on the ground that DAI's motion for judgment as a matter of law was not served at least ten days before trial, as was required given that the February 14 ruling treated DAI's motion as one for summary judgment. *See* FED. R.CIV.P. 56(c). In fact, the February 14 ruling conferred Rule 56 status not on DAI's motion to forego trial, but on DAI's petitions to compel arbitration. These were served between approximately March 8, 1994 and September 8, 1995, allowing each franchisee anywhere from five to twenty-three months to come forward with evidence before the eventual trial date. The franchisees' failure to do so until the very end of this protracted period clearly undermines their demand for a jury trial, as the Second Circuit has apparently regarded a delay of even a few weeks to be too great. *See Manning*, 833 F.2d at 1103.

*B. The Franchisees' Affidavits*

Although belated, the franchisees' affidavits will be considered in relation to their defenses, along with the parties' compliance with the January 24, 1996 Trial Preparation Order. Affidavits of the following franchisees have been offered: Michael Johnson, Emily Distajo, Jose Brenes, Alvaro Guerrero, Sandra Bickel, Linda (Youmaran) Boudaghian, Louis Loenneke, Julie Shino, Gregory Kane, John Papaleo, Michael Kanchwala, Donald A. Stuart, Ronald Rothmund, and Bruno Giannini.

The affidavits are essentially identical, distinguished only by limited details of personal dealings with DAI or its affiliates. Each affidavit recites the following:

a) Before signing the franchise agreement, the franchisee was provided an offering circular;

b) The franchisee signed a form franchise agreement with DAI;

c) The franchise agreement provided that all disputes between DAI and the franchisee were to be arbitrated;

d) The franchise agreement stated that arbitration was a condition precedent to litigation by any party;

e) The representation in d) was false;

f) The falsity, per e), was not known by the franchisee when the franchise agreement was signed but is known now;

g) The franchisee did not know that lessors of the franchisee's business premises were alter egos of DAI or that they routinely initiated eviction lawsuits to resolve claims under the franchise agreement;

h) If g) had been known, the franchisee would not have signed the franchise agreement;

i) The franchisee relied on c) and d);

j) When signing the franchise agreement, the franchisee was not aware that the leasing companies had no assets, employees, income, or offices. Had this been known, the franchise agreement would not have been signed; and

k) DAI used eviction, actual or threatened, as leverage to force correction of alleged franchise agreement defaults.

Some franchisees also assert that:

a) Charges related to evictions were deducted from franchisees' deposit accounts;

b) Complaints to DAI about eviction and franchise agreement enforcement went unanswered;

c) Some stores were sold/lost in the face of eviction;

d) Suits resulted from agreements to sell that were reached in the face of eviction; and/or

e) One franchisee was evicted by the landowner at DAI's instance.

## C.  The Offering Circular and Franchise and Lease Agreements

The franchise agreement and/or offering circular provide:

a) The franchisee acknowledges receipt of the offering circular ten days in advance of signing the franchise agreement;

b) "Any controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by Arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association ... The commencement of arbitration proceedings to settle disputes arising out of or relating to this contract is a condition precedent to the commencement of a legal action by either party...."; and

c) "Other than the representation contained in this Agreement and advertising materials of the Franchisor, no other representations have been made to or relied on by the Franchisee...."

Each franchisee, in addition to executing a franchise agreement, executed a lease for the property in which the store was to be operated. The lessor was a leasing company associated with DAI. The offering circular notes the prospect of another corporation being the lessor and includes a sample sublease which flags the right of a lessor to seek eviction in the event of non-compliance with the franchise agreement or with the lease. There are no arbitration clauses in the leases.

The franchisees have not asserted that any information was provided by DAI, or anyone acting on its behalf, on which any franchisee relied in agreeing to the arbitration clause, other than the franchise agreement and the offering circular. There is no evidence that DAI concealed any material fact or refused any request by any franchisee for information about either the franchise agreement or the lease.

## D.  The Franchisees' Defenses

### 1.  Fraud

The franchisees argue that they were induced to agree to arbitration by fraud on the part of DAI. "[I]f the 'arbitration clause was induced by fraud, there can be no arbitration....'" *Distajo*, 66 F.3d at 457. Under Connecticut law,[2] the elements of fraud are "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." *Miller v. Appleby*, 183 Conn. 51, 54–55, 438 A.2d 811, 813 (1981). "Fraud is not to be presumed but must be proven by clear and satisfactory evidence." *Id.* at 55, 438 A.2d at 813. The issue is not whether DAI acted improperly in failing to arbitrate before resorting to litigation. If DAI failed to take steps required to resolve disputes with franchisees, there are remedies by which they may enforce their rights and DAI's obligations. To prevail on their defense, the franchisees must present evidence from which it could be found that they were induced by fraud to agree to arbitration.

The evidence is that the franchisees received the offering circular describing the transaction and the documents which accomplished it, the franchise agreement and the lease. For the ten days required by 16 C.F.R. § 436.1 *et seq.*, they had the opportunity to review the franchise agreement and consult with whomever they wished. They signed the franchise agreement and the lease with no evidence they were under any stress in doing so. They do not claim to have asked questions which were not answered. There is no claim of a representation other than what the franchise and the lease provided. The franchisees claim the representation that arbitration was a condition precedent to litigation was false and thus fraudulent. Arbitration is so stated as a provision of the franchise agreement. It is stated not as a

---

**2.** Most franchise agreements designate Connecticut law as controlling. Some cite Florida or

Illinois law. DAI claims, without contradiction, that Florida and Illinois law does not differ.

.fact but as a requirement of the franchise agreement. Even if it is regarded as an undertaking by DAI, it has not been shown to be false. There is no evidence that DAI had any intention, at the time of execution of the franchise agreements, to act in enforcement of its rights and the franchisees' obligations, other than in conformity with the lawful remedies available to it under the law.

At most, the evidence might show that the franchisees did not understand, or more likely did not consider, the possibility when the franchise agreement was signed, that franchise agreement duties might be enforced by eviction proceedings undertaken pursuant to the leases providing: "[i]f. . . .Sublessee shall default in the performance of any of the terms, covenants or conditions of the aforesaid Franchise Agreement ... Sublessor, at its option, may terminate this lease on ten (10) days written notice to Sublessee, and upon such termination, Sublessee shall quit and surrendered the leased premises...." Clearly compliance with the franchise agreement was interrelated with the entitlement to continued occupancy of the subleasehold. That evidence is insufficient to sustain the franchisees' claim. At most, they lacked understanding of the ramifications of two documents which they had ample opportunity to read and understand. In signing them, they are presumed to have read what was available to be read. They cannot hold DAI as misrepresenting what is plainly stated in the documents nor the legal ramifications thereof. If they did not understand what the documents plainly provide, their lack of understanding could not have resulted from misrepresentation, concealment, or misleading on the part of DAI. If the franchisees truly did not understand that eviction as provided by the lease could be used to enforce franchise agreement obligations, that lack of understanding could only have been the result of their failure to read the leases and franchise agreements, their failure to think through and thus consider DAI's possible courses of action to enforce the franchise agreements or their failure to consult and seek clarification of anything they did not understand. No omission or conduct of DAI is claimed or shown to have caused the franchisees' lack of knowledge.

▮▮▮▮▮ It cannot be found that the franchisees' have offered evidence from which it could be found that they were fraudulently induced by DAI to agree to the arbitration clause. The clause which described arbitration as a condition precedent to litigation is not, as a matter of law, a misrepresentation. Defendants thus make an argument without factual substantiation. There is no reason why they did not know, when they executed the franchise agreement, with the arbitration clause, what they claim to know now. Nor is there any reason why they could not have known then what they claim to know. What was in the lease and the franchise agreement was plainly available for them to have read and understood or to have been clarified had they wished. DAI neither precluded them from reading what was in each document nor comprehending what is plainly there stated. One cannot fail "to inquire about the ramifications of [an arbitration] clause to avoid the obvious consequences of an agreed-to arbitration." *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir.1984). The franchisees cannot claim that DAI failed to explain an ambiguous contract because there is no ambiguity. Absent ambiguity, there can be no liability for failure to explain the meaning of a contract. *See Rush v. Oppenheimer & Co., Inc.*, 681 F.Supp. 1045, 1053–55 (S.D.N.Y.1988); *Bender v. Smith Barney, Harris Upham & Co. Inc.*, 789 F.Supp. 155, 158–59 (D.N.J.1992).

After consideration of what the franchisees have now made part of the record, it is found that they have not offered evidence from which it could be found that there was a misrepresentation, known by DAI to be false, which was made to induce them to agree to arbitration. Accordingly, the franchisees' defense of fraud does not present a triable issue.

### 2. Waiver

▮▮▮▮▮ The elements of waiver are that an eviction was initiated by DAI based on a franchise agreement default and its cross-default provision and that prejudice was caused to a franchisee in relation to the claim now in litigation. *See Distajo*, 66 F.3d at

457. DAI concedes responsibility for the eviction, resolving the alter ego and control questions. Doubt as to defenses to arbitration, such as waiver, are to be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). This is consistent with promotion of arbitration as the parties' chosen method of resolving disputes. *See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 25 (2d Cir.1995). Arbitration's favored status creates a presumption against waiver. *Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir.1991); *Lawrence v. Comprehensive Business Servs.,* 833 F.2d 1159, 1165 (5th Cir.1987).

### a. Franchisees Who Were Not Subject to Eviction Proceedings

■ The following franchisees have not been subject to any eviction action and therefore cannot claim waiver: Raymond and Sandra Bickel, Michael Johnson, Gregory Kane, Louis Loenneke and Mary Ann Bookout, Julie and Johnson Shino, and Leylah and Albert Yonan.

Kane makes no allegation of eviction by DAI. He asserts an eviction by his "Landlord" unrelated to DAI. He claims the landlord was requested to do so by DAI with no reflection of any foundation for the claim— i.e., the source of his assertion. His claim of a defense fails for two reasons. The eviction is not shown to have been based on a default under a franchise agreement, and could not be where brought by an unrelated landlord under a lease which is not shown to have a cross-default clause with the franchisee. Secondly, the eviction was not done by an alter ego under DAI control and thus could not have prejudiced Kane as the issues there litigated are not shown to have any relation to the issues between Kane and DAI. There is no substantiation for his claim of waiver.

■ Johnson, Loenneke, and Julie Shino allege not eviction, but only threats of eviction which forced them to make payments of amounts owed. Shino claims threats to collect eviction fees which are not shown to be franchise agreement obligations. Payments made under threat of eviction are not a basis for waiver absent an eviction, the prosecution of which constitutes "litigation of substantial issues going to the merits." *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.,* 754 F.2d 457, 461 (2d Cir.1985), *cert denied,* 474 U.S. 819, 106 S.Ct. 68, 88 L.Ed.2d 55 (1985). Thus there is no evidence that "DAI did litigate substantial issues going to the merits" and that "the franchisees suffered prejudice from the eviction proceedings." *Doctor's Assocs.,* 66 F.3d at 457. These franchisees cannot have been forced to litigate issues in eviction proceedings when there were no such proceedings. They were not prejudiced thereby. Johnson, Kane, Loenneke and Bookout, Yonan, and the Bickels and Shinos have not offered evidence from which it could be found that their defense of waiver is valid and thus no issue is presented for determination by a trier of fact.

### b. Franchisees Who Were Subject to Eviction Proceedings

#### i. Background

*Alvaro and Maria Guerrero.* In the summer of 1992, an eviction was brought and dismissed against the Guerreros after they reached "an agreement with respect to the claimed unpaid royalties" and fees. In July 1993, another eviction action was brought for the same royalties and fees. The Guerreros made no claim for arbitration. The action was dismissed as the sublessor was not registered to do business in the state. There was no adjudication of the merits. There is no claim by the Guerreros that royalties or fees were not owed to DAI.

*Wesam and Linda Youmaran.* An eviction was commenced against the Youmarans, who did not seek arbitration of the claimed royalties and fees. A judgment of possession and indebtedness entered. The Youmarans paid and were permitted to retain possession and sell the franchise. They have not claimed that royalties or fees were not owed to DAI.

*Emily and Renato Distajo, and Constantino and Milo Lamando.* An eviction was brought against the Distajos and Lamandos, who were co-franchisees. Unpaid royalties

and fees were alleged. They made no claim for arbitration. The case was dismissed in three weeks for want of registration by the sublessor in the state. There was no adjudication of the substantive claims. These franchisees do not claim there that royalties or fees were not owed to DAI.

*John Papaleo.* An eviction action was commenced against Papaleo, who did not dispute unpaid royalties and advertising fees under the franchise agreement. He claimed that he was unable to pay them. He abandoned the store and the franchise, whereupon the eviction was dismissed. No adjudication of the disputes occurred. Arbitration was not claimed.

*Jose Benes.* Evictions were initiated against Jose Benes who operated two locations. Fees under the franchise agreements were claimed. Arbitration was not claimed by Benes. While the first eviction was pending, the lease was not renewed by the sublessor. Benes was required to pay the rent due under the lease. Thus the sublessor was not required to preserve the property for him. That location was lost. There is no evidence of an adjudication of the substantive claims pertaining to that location. At the second location, eviction was ordered but before it was executed Benes surrendered the property.

*Ronald and Patricia Rothmund.* An eviction was brought against the Rothmunds based on unpaid royalties and fees under the franchise agreement for which judgment was entered. The Rothmunds have not disputed unpaid amounts due. They were "unaware of the eviction lawsuit or the judgment against [sic] that time." DAI refused to negotiate the payment offered toward the amount claimed, and the store was padlocked.

*Michael and Anver Kanchwala, and Azim Hemani.* The eviction action against the Kanchwalas and Hemani is claimed by DAI to have been based solely on unpaid rent. It supports its contention by an affidavit, its letter to the franchisees of January 6, 1995, and the complaint in the eviction action. Michael Kanchwala concedes that the eviction claimed unpaid rent under the sublease but adds that attorneys' fees were claimed under the franchise agreement. By Kanchwala's own affidavit, however, the eviction action was brought by a leasing company which was not a party to the franchise agreement. It was impossible, therefore, for the court to award fees based thereupon. Thus, Kanchwala's assertion that attorneys' fees were claimed under the franchise agreement cannot be credited and will not be deemed to create an issue for a trier of fact.

*Bruno Giannini.* An eviction action was brought against Giannini, who did not seek arbitration and did not dispute the amount alleged to be owed. He asserts he had difficulty paying royalties on time. The action was dismissed as the sublessor was not registered to do business in the state. No substantive disputes were adjudicated.

### ii. Discussion

The substantive disputes between these franchisees and DAI are twofold. The first group of disputes arise from the franchise agreement in the form of royalties and fees that defendants do not dispute are provided for in the franchise agreement. There is no evidence from which it could be found that these were improper bases for the eviction actions, nor is it claimed that no amount had accrued to DAI's credit.

The second group of disputes are defendants' complaints of DAI's conduct in bringing about the franchise agreements and in dealing with franchisees in relation to the operation of the franchises. These were asserted in the state court claims which prompted DAI's petitions to compel arbitration.

■ Only if the eviction actions claimed noncompliance with the franchise agreements and prejudiced the franchisees by forcing litigation of arbitrable claims will waiver will lie as a defense to arbitration. Litigation involving claims that were not arbitrable does not constitute waiver of the right to arbitration. *Lawrence,* 833 F.2d at 1165. "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Miller Brewing Co. v. Fort Worth Distrib. Co.,* 781 F.2d 494, 496 (5th

Cir.1986). As to franchisees subjected to eviction actions, it must be considered whether DAI delayed requesting arbitration of the claims presented and that the eviction proceedings prejudiced the franchisees' claims. *See Ank Shipping Co. of Greece v. Seychelles Nat'l Commodity Co., Ltd.,* 596 F.Supp. 1455, 1458 (S.D.N.Y.1984).

■ The eviction action against the franchisees Kanchwala and Hemani was not based on any claim arising under the franchise agreement. Their claim of waiver cannot be found to be substantiated by any evidence.

■ The eviction actions against the franchisees Distajo, Yonan, and Giannini were dismissed as their sublessor was not registered in the state and thus could not maintain the action. No substantive claims were adjudicated therein and the franchisees were not prejudiced. "[F]iling of an action [ ] is not a waiver of the right to arbitrate, at least not before the defendant has answered on the merits...." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Lecopulos,* 553 F.2d 842, 845 (2d Cir.1977). Their claim of waiver is not substantiated.

The first eviction action against Guerrero was settled and dismissed. The second action was dismissed as the sublessor was not registered in the state and could not maintain the action. For the same reasons noted with respect to Distajo, Yonan, and Giannini, Guerrero cannot be found to have sustained his claim of waiver.

■ The eviction action against Papaleo was dismissed after he abandoned the store. There is no evidence to suggest that the process was substantial or that any adjudication of his rights actually occurred. As he walked away from the premises, and the franchise, there appears to be no evidence of prejudice and his claim of waiver thus could not be found to be sustained.

■ The eviction action against the Youmarans resulted in a judgment but they settled the claim of unpaid royalties and fees, retained the location, and subsequently sold the business. That evidence would not suggest they suffered any prejudice with respect to the claims involved in their claims against DAI and thus would not sustain their claim of waiver.

The Rothmunds had no knowledge of the action until they were notified they were about to be locked out. They were evicted.

■ The first premises subleased to Benes were lost when the sublessor, who claimed nonpayment of rent, did not renew the lease. The record clearly reflects that Benes was obliged for the rent under the lease. The eviction pertaining to that property is not shown to have prejudiced him as the loss of the property, and his rights under the sublease, were not the responsibility of DAI or his sublessor. The eviction pertaining to his second location did result in a court order ousting him of possession. That was accomplished by his surrender of the property.

The eviction actions, and in particular those against Benes and the Rothmunds, asserted amounts due under the franchise agreements and the leases. None of the proceedings are suggested to have been extensive, nor have the results been suggested as in any way impairing the claims the franchisees asserted in their state court actions concerning which DAI has requested arbitration. What the franchisees have claimed in those actions they are fully able to present in arbitration or in court, whichever forum they are found entitled to. There has been no delay to the franchisees with respect to the claims asserted in state court other than the delay in their efforts to avoid arbitration. DAI, promptly after each state court action was commenced, petitioned for an order compelling arbitration. The eviction actions claimed remedies on the basis of defaults by the franchisees in obligations allegedly created by the franchise agreements and/or subleases. The franchisees have not disputed the obligations or the defaults except some disputes as to the amounts accrued. What they have challenged is the propriety of DAI and the sublessors reserving the right to those remedies and procedures in the franchise agreements and subleases and the propriety of the conduct of the sublessors, DAI, and DAI's associates other than the sublessors (who were not involved in the eviction

actions). In short, the disputes involved in the eviction actions are not the same as the disputes involved in the franchisees' state court actions which DAI has sought to resolve in arbitration.

The franchisees note expense incurred in the eviction cases, of limited magnitude, *see Distajo,* 66 F.3d at 457, but suggest no identity of the issues in those cases, even those in which judgments entered, and the issues in the matters DAI seeks to arbitrate. The cases are clear, and *Distajo* confirms, to have waived the right to arbitration the party seeking arbitration must substantially invoke the judicial process to resolve the issues claimed for arbitration. In *Distajo,* Judge Cabranes cites *Cotton v. Slone,* 4 F.3d 176 (2d Cir.1993), and *Com–Tech Associates v. Computer Associates International, Inc.,* 938 F.2d 1574 (2d Cir.1991), in which prejudice was found where the party seeking arbitration "fully litigated *arbitrable* issues on the merits" or "forced plaintiffs to litigate *arbitrable* claims, and caused considerable expense and delay" with respect to the precise issues sought to be placed in arbitration. *Distajo,* 66 F.3d at 457 (emphasis added). That is not the case here. *See Gingiss Int'l, Inc. v. Bormet,* 58 F.3d 328, 332 (7th Cir. 1995) (no waiver in bringing an eviction action on a separate sublease "because that action involved different issues" than those being arbitrated); *McMahon v. Shearson/Am. Express, Inc.,* 618 F.Supp. 384, 387 (S.D.N.Y.1985), *aff'd in part and rev'd on other grounds,* 788 F.2d 94 (2d Cir.1986), *rev'd on other grounds,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987).

The franchisees never sought to arbitrate the claims now at issue, consistent with their vigorous efforts in these actions to avoid arbitration. Their claims of prejudice are less telling when the only delay in obtaining a determination of the disputes is not the result of the eviction actions but of their attempts here to avoid arbitration. The issues that the franchisees asserted in state court were not raised in any of the eviction actions. When they were raised in state court, DAI immediately petitioned for orders to compel their arbitration.

The franchisees argue that threats of use of eviction, and charges of franchisees' accounts with eviction-related activities, qualify as grounds for finding prejudice. They cite no authority for the proposition, and the argument flies in the face of the cases discussed above, which clearly base waiver on substantial resort to the courts to litigate arbitrable disputes. Threats are not a basis for finding waiver. *Romnes v. Bache & Co.,* 439 F.Supp. 833, 839 (W.D.Wis.1977). The franchisees assert prejudice but offer no analysis or demonstration of how prejudice occurred. Each eviction action but one was concluded prior to commencement of each franchisee's state court action. The Distajo eviction was dismissed several days after the state court action was commenced. A concluded eviction action could hardly have delayed or prejudiced a defendant who later sought to litigate different issues.

### 3. Abstention

■ The franchisees Raymond and Sandra Bickel argue that this court should abstain from compelling them to arbitrate because of a related, December 6, 1995 judgment in their favor in Illinois state court. This court's February 14 ruling noted that the Bickels' abstention claim does not present issues of fact and can be decided as a matter of law. The Bickels have not objected to this conclusion.

The Bickels' abstention claim is just a slightly modified version of the res judicata/collateral estoppel argument that this court and the Second Circuit have previously rejected. *See Distajo,* 66 F.3d at 449–50. When disposing of the earlier defense, the Second Circuit noted that an Illinois judgment is not entitled to preclusive effect until the " 'the potential for appellate review [has] been exhausted.' " *Id.* (quoting *Ballweg v. City of Springfield,* 114 Ill.2d 107, 113, 102 Ill.Dec. 360, 362, 499 N.E.2d 1373, 1375 (1986)). Illinois law has not changed in the interim, and DAI's appeal of the Bickels' judgment is still pending. Accordingly, there is no basis for preclusion.

A different outcome is not warranted by the Bickels' reliance on *Moses H. Cone Memorial Hospital v. Mercury Construction*

*Corporation,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). That case counsels abstention when relatively substantial proceedings have taken place in state court. *Id.* at 22, 103 S.Ct. at 940–41. DAI asserts, without contradiction, that the Illinois judgment was entered almost immediately and without an evidentiary hearing. Such action does not constitute relatively substantial proceedings, as meant by *Moses H. Cone,* when compared with the Second Circuit's *Distajo* ruling and this court's plethora of decisions in these consolidated cases over the last two years.

## II. CONCLUSION

For the foregoing reasons, the franchisees' motion (docs. 191–1, 191–2) is denied. The prior finding that the franchisees have not shown their entitlement to trial on the issue of fraud, and that as a matter of law that defense is without merit, will stand. The franchisees have also not demonstrated the existence of a genuine issue of material fact as to their defense of waiver, which is found to be without merit as a matter of law. Further, it is found that there is no basis for abstention as to the Bickels.

Accordingly, DAI's petitions to compel arbitration are granted. The preliminary injunctions entered on November 28, 1995 and January 3, 1996 will remain in effect because they are necessary to effectuate the foregoing judgment compelling arbitration. *See, e.g., McGuire, Cornwell & Blakey v. Grider,* 765 F.Supp. 1048, 1052 (D.Colo.1991).

The clerk shall close the file.

SO ORDERED.