(text box: 1) NO. 5-96-0029

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

RAYMOND BICKEL, Individually and )  Appeal from the 

as Special Administrator of the Estate of )  Circuit Court of

Sandra Bickel, Deceased, )  Madison County.

) 

     Plaintiff-Appellee, )

)

v. )  No. 94-L-1428

 )

SUBWAY DEVELOPMENT OF ) 

CHICAGOLAND, INC., )  

)  

     Defendant-Appellant, )  

)

and )

)

DOCTOR'S ASSOCIATES, INC., )

SUBWAY SANDWICH SHOPS, INC., )

LEONARD AXELROD, FREDERICK )

DeLUCA, PETER BUCK, and PHIL )

MESI, )  Honorable

)  Philip J. Kardis,

     Defendants. )  Judge, presiding.

___________________________________________________________________________

JUSTICE GOLDENHERSH delivered the opinion of the court:

This case originated in 1994 when Sandra Bickel, now deceased, and her husband, Raymond Bickel, now individually and as the special administrator of the estate of Sandra Bickel, filed a lawsuit in the circuit court of Madison County against, 
inter alia
, Doctor's Associates, Inc. (Doctor's), and Subway Development of Chicagoland, Inc. (Subway Development).  The lawsuit claimed fraud, breach of contract, and willful and wanton breach of contract and sought a declaratory judgment that the arbitration clauses in their two franchise agreements were void and unenforceable.  Here, Subway Development appeals from a $400,000 default judgment entered against it and in favor of the plaintiffs and from the denial of its motion to vacate that judgment.  The other defendants are not a subject of this appeal.  The issues raised by Subway Development are, in essence, (1) whether the service of the complaint was proper and (2) if service was proper, whether the $400,000 default judgment entered in favor of the plaintiffs and against Subway Development was proper.  We affirm in part, vacate in part, and remand for a hearing on the issue of damages.

I. BACKGROUND

The instant case is a study in the art of protracted litigation.  We will recite only those facts necessary for an understanding of our decision herein.  All of the plaintiffs' claims arose out of or related to two Subway franchise agreements between the plaintiffs and Doctor's, dated November 23, 1984, and March 18, 1986, respectively.  Both franchise agreements contain arbitration clauses which provide that any controversies or claims arising out of or relating to the contract be resolved through arbitration in Connecticut by the American Arbitration Association.  On December 16, 1994, the plaintiffs filed suit in Madison County against, 
inter alia
, Doctor's, the national franchiser of Subway sandwich shops, and Subway Development, a company operated by one of Doctor's sales agents.  Doctor's is a Connecticut corporation while Subway Development is an Illinois corporation. 

On January 5, 1995, the plaintiffs served both Doctor's and Subway Development by leaving a copy of the complaint and the summons in the Office of the Illinois Attorney General, with the secretary for the chief counsel.  Subway Development and Doctor's previously filed sworn consents appointing the Illinois Attorney General as their agent for service of process.  The Illinois Attorney General is the administrator for the Franchise Disclosure Act of 1987 (Act) (815 ILCS 705/1 
et seq.
 (West 1992)).  Doctor's disclosure statement, filed pursuant to the Act, states that the Illinois Attorney General is the agent for service of process for both Doctor's and Subway Development.  The disclosure statement was distributed to prospective Subway franchise purchasers by both Doctor's and Subway Development.

On January 20, 1995, Doctor's filed a demand for arbitration against the plaintiffs and a petition for a preliminary injunction in the United States District Court for Connecticut. Doctor's sought to compel the plaintiffs to arbitrate their claims against Doctor's in Connecticut and requested a preliminary injunction against further prosecution in Madison County.  The plaintiffs do not have an arbitration agreement with Subway Development, and Subway Development was not a party to the arbitration demand or the petition to compel arbitration filed by Doctor's.  The district court scheduled a hearing on Doctor's petition to compel arbitration and motion for a preliminary injunction on February 13, 1995.

Neither Doctor's nor Subway Development entered its appearance in Madison County within 30 days after January 5, 1995.  Affidavits of employees of the Illinois Attorney General's office show that the Attorney General's office was served on January 5, 1995, and that the Attorney General's office mailed two copies of the summons and complaint against Doctor's to Doctor's Florida and Connecticut addresses and two additional copies of the summons and complaint against Subway Development to Subway Development's Chicago office, as well as to Doctor's Florida office on behalf of Subway Development.  On February 7, 1995, the circuit court of Madison County entered a default judgment on the issue of liability against Doctor's and Subway Development.  The default judgment included a declaratory judgment that the arbitration clause was void and unenforceable.  The circuit court scheduled a hearing on damages for April 4, 1995.    

On February 10, 1995, Subway Development filed a general entry of appearance and a request for an additional 30 days to respond to the plaintiffs' complaint.  On February 17, 1995, Doctor's likewise filed a general entry of appearance and the same request for an additional 30 days to respond.  

After a hearing on February 13, 1995, the district court entered an order granting Doctor's petition to compel arbitration and motion to enjoin the Illinois action.  The injunction did not, however, affect Doctor's or Subway Development's right to take steps to vacate the default judgment here in question.

On February 17, 1995, Doctor's and Subway Development filed a motion to set aside the default judgment.  On March 15, 1995, the plaintiffs filed a motion in opposition to the motion to vacate the default judgment, including an affidavit of Sandra Bickel.  With regard to damages, the affidavit stated that the plaintiffs "were damaged because of their lost investment in the Subway stores, the lost income from those stores[,] and the lost value of those stores in the sum of $400,000."  Ms. Bickel's affidavit was filed for the express purpose of opposing Doctor's and Subway Development's motion to vacate the default.  During the April 4, 1995, hearing on the motion to set aside the default, the plaintiffs' attorney stated as follows:

"[A]s to this hearing today, we are not asking for any damages.  As a matter of fact, we are enjoined from asking for damages.  The only exception to the injunction is they can ask to set aside the default judgment, which we feel is inappropriate, but that was an issue on appeal in the federal system, so there is no request for actual damages or punitive damages or anything here, just that this default judgment which was appropriate under the circumstances [
sic
]."

Despite the plaintiffs' attorney's statement that the plaintiffs were not seeking damages at that time, the plaintiffs later claimed that damages had been proved at the hearing.

On September 12, 1995, the United States Court of Appeals for the Second Circuit reversed the order compelling arbitration, vacated the preliminary injunction entered on February 13, 1995, and remanded that case, along with several other cases, to the district court.  
Doctor's Associates, Inc. v. Distajo
, 66 F.3d 438 (2d Cir. 1995).  The preliminary injunction remained in place, however, until November 22, 1995, when the Second Circuit issued its mandate vacating the injunction.  

On November 16, 1995, the circuit court heard additional arguments concerning Subway Development's motion to set aside the default.  At that time, the plaintiffs' attorney stated, "[T]his was argued back in April of this year[,] at which time we submitted an [a]ffidavit of damages."  The plaintiffs' attorney moved that the issue of punitive damages be separated and that a default judgment be entered after a mandate issued from the Second Circuit vacating the preliminary injunction.  The plaintiffs' attorney submitted a proposed judgment that would award $400,000 in compensatory damages.  Subway Development's counsel objected to the proposed judgment and reminded the circuit court that the injunction was still in effect.  Subway Development's counsel asked that if the motion to set aside was not granted, Subway Development be allowed a jury trial on the issue of damages.               On December 6, 1995, the district court entered a temporary restraining order to enjoin the plaintiffs from proceeding with the Illinois lawsuit.  On December 7, 1995, the circuit court, unaware of the temporary restraining order, entered a judgment awarding the plaintiffs $400,000 in compensatory damages and severing the remaining claims (
i.e.
, punitive damages) for determination at a later date.  The circuit court stated:

"The default judgment of February 7, 1995[,] scheduled a damage hearing for April 4, 1995.  The affidavit of Sandra Bickel established that [p]laintiffs suffered actual damages in the sum of $400,000.00.  [Doctor's and Subway Development] offered no contrary evidence.  While the preliminary injunction issued by the [district court] previously enjoined the [p]laintiffs from prosecuting their claims against any of the [d]efendants in this case, it did not enjoin either [Doctor's or Subway Development]. ***

This [c]ourt, being advised that the [p]laintiffs are no longer enjoined from proceeding with their claims against any of the [d]efendants in this case, including [Doctor's and Subway Development], hereby enters judgment in favor of [p]laintiffs *** in the sum of $400,000.00, plus court costs."

On January 5, 1996, Doctor's and Subway Development filed a notice of appeal from the above-cited judgment.

Based upon the entry of the December 6, 1995, judgment, the plaintiffs argued that the district court should abstain from exercising jurisdiction over Doctor's motion to compel arbitration, because of the $400,000 default judgment.  The district court rejected the plaintiffs' contention on the basis that "the Illinois judgment was entered almost immediately and without an evidentiary hearing," and it stated, "Such action does not constitute relatively substantial proceedings."  
Doctor's Associates, Inc. v. Distajo
, 944 F. Supp. 1010, 1023 (D. Conn. 1996).  The district court granted Doctor's motion to compel arbitration and issued a preliminary injunction against the Illinois proceedings, pending the outcome of arbitration.  
Distajo
, 944 F. Supp. at 1023.  The Second Circuit affirmed.  
Doctor's Associates, Inc. v. Distajo
, 107 F.3d 126, 139 (2d Cir. 1997).  

On March 6, 1996, Doctor's and Subway filed a motion to stay the appeal during the pendency of the preliminary injunction, which this court granted.  On June 17, 1998, Sandra Bickel died.  During 2000, this court issued an order to show cause why the stay of this appeal should not be lifted.  Doctor's and Subway Development responded that because the federal injunction had never been modified or reversed, the instant appeal remained enjoined.   On May 20, 2003, after two days of hearings, an arbitrator in Connecticut issued a final award on the claims for compensatory damages in the amount of $46,440 and denied the claim for punitive damages.  The plaintiff filed a motion to confirm the award with respect to liability but asked the district court to vacate the arbitrator's award of damages on the basis that the damages were insufficient as a matter of law.  

On November 19, 2003, the district court denied the motion to vacate and confirmed the arbitrator's final award.  The district court also denied Doctor's request that the Illinois case between Subway Development and the plaintiff be permanently enjoined, and the preliminary injunction expired.  The plaintiff moved this court to lift the stay of the appeal of Subway Development only, which this court granted.  Subway Development now appeals from the $400,000 default judgment.

II. ANALYSIS

A. Service

The first issue we are asked to consider is whether the service of the complaint was proper.  Subway Development contends that the delivery of the complaint to a secretary at the Illinois Attorney General's office, without more, does not constitute proper service under Illinois law.  The plaintiff replies that Subway Development waived any objection to the method or manner of service when it entered a general appearance, moved to vacate the default judgment, and acknowledged it had been served, without first specially appearing and objecting to the circuit's court exercise of personal jurisdiction.  We agree with the plaintiff.

Section 2-301 of the Code of Civil Procedure (Code) concerns objections to personal jurisdiction, and in 1994 it provided in pertinent part as follows:

"Special appearance.  (a) Prior to filing any other pleading or motion, a special appearance may be made either in person or by attorney for the purpose of objecting to the jurisdiction of the court over the person of the defendant.  A special appearance may be made as to an entire proceeding or as to any cause of action involved therein.  Every appearance, prior to judgment, not in compliance with the foregoing is a general appearance."  735 ILCS 5/2-301(a) (West 1994).

A special and limited appearance is confined solely to the purpose of contesting jurisdiction.  
Charles v. Gore
, 248 Ill. App. 3d 441, 446, 618 N.E.2d 554, 557 (1993).  A special and limited appearance must be designated as such to avoid being construed as a general appearance.  
Ahart v. Young
, 194 Ill. App. 3d 461, 464, 551 N.E.2d 685, 688 (1990).  Any action taken by a litigant that recognizes the case as being in court will be considered a general appearance unless that action was for the sole purpose of contesting jurisdiction.  
Lord v. Hubert
, 12 Ill. 2d 83, 145 N.E.2d 77 (1957).  

In the instant case, neither Subway Development nor Doctor's filed a special entry of appearance, contended that the circuit court lacked personal jurisdiction, or moved to quash the service of the summons.  On February 10, 1995, Subway Development filed a general entry of appearance and a request for an additional 30 days to respond to the plaintiffs' complaint.  On February 17, 1995, Subway Development and Doctor's filed a motion to set aside the default judgment; they asked that the default judgment be vacated pursuant to section 2-1301(e) of the Code (735 ILCS 5/2-1301(e) (West 1994)).  

Section 2-1301(e) provides that the court in its discretion may "set aside any default[] and may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable."  735 ILCS 5/2-1301(e) (West 1994).  In the motion to set aside the default, Subway Development and Doctor's acknowledged they had been served.  They stated that the plaintiffs' counsel "changed their past practice of serving [Doctor's] through XL Corporate services and serving Subway Development through Mr. Samotny[] and instead 
served [Doctor's] and Subway Development at the 
[
O
]
ffice of the Illinois Attorney General
."  (Emphasis added.)  That motion further acknowledged as follows: "On February 7, 1995, 
just the 32nd day after service of complaints 
upon the Illinois Attorney General, [the plaintiffs'] counsel filed a [m]otion for [d]efault ***."  (Emphasis added.)

The section 2-1301(e) motion was clearly directed to the discretion of the trial court.  A review of that motion shows that Subway Development was not contesting that the trial court had jurisdiction over it.  Subway Development waived any jurisdictional argument it might have had, by failing to file a special and limited appearance to contest jurisdiction.  Under these circumstances, where Doctor's and Subway Development filed general entries of appearance, acknowledged service at the Illinois Attorney General's office, and failed to assert a lack of jurisdiction, Subway Development has waived any objection to the method or manner of service. 

At first blush, the case of 
Sullivan v. Bach
, 100 Ill. App. 3d 1135, 427 N.E.2d 645 (1981), appears to support Subway Development's position.  In 
Sullivan
, the court held that a party does not waive jurisdictional objections in filing a petition to vacate a default judgment entered before the court obtained jurisdiction.  
Sullivan
, however, is distinguishable from the case at bar because in 
Sullivan
, unlike here, the defendant did not acknowledge that its registered agent had been served.  The defendant in 
Sullivan
 asserted that the person who had been served with the summons and complaint was not its registered agent.  Here, it is uncontested that the Illinois Attorney General's office was Subway Development's registered agent.  Prior to the service, both Doctor's and Subway Development had filed sworn consents appointing the Illinois Attorney General as their agent for service of process.  

After careful consideration, we find that there has been a waiver of the argument on service of process.  Accordingly, we need not consider whether the service of process was proper.  We next, however, consider Subway Development's argument that regardless of whether the service was proper, the circuit court abused its discretion in refusing to set aside the default judgment.

B. Default Judgment

Subway Development argues that prior to the entry of the default it was unaware that it had been served with a complaint and that after learning about the default, it moved almost immediately to have it set aside.  Subway Development further argues that its memorandum in support of its motion to set aside the default judgment identified several meritorious defenses, including the statute of limitations, a disclaimer signed by the plaintiffs before they purchased their second store, in which they stated that Subway Development had not made any representations to induce them to purchase their second store, and the arbitration clauses contained in the franchise agreements.  Subway Development insists that under these circumstances, the circuit court's refusal to vacate the default judgment was an abuse of discretion.  We disagree.

As previously set forth, section 2-1301(e) of the Code vests the trial court with discretion to set aside a default.  735 ILCS 5/2-1301(e) (West 1994).  A liberal policy exists with respect to vacating defaults under section 2-1301(e).  
City of Chicago v. Central National Bank
, 134 Ill. App. 3d 22, 25, 479 N.E.2d 1040, 1043 (1985).  However, the overriding consideration under section 2-1301(e) is whether or not substantial justice is being done between the litigants and whether it is reasonable under the circumstances to force the other party to a trial on the merits.  
Stotlar Drug Co. v. Marlow
, 239 Ill. App. 3d 726, 728, 607 N.E.2d 346, 348 (1993).  

A review of the record in the instant case shows that Subway Development was well aware that a lawsuit had been filed in Illinois.  Instead of dealing with the Illinois lawsuit, Subway Development made a calculated decision to ignore the Illinois case and focus its energy on having the matter determined by a Connecticut court.  Accordingly, the circuit court refused to vacate the default judgment because it believed that the plaintiffs would be more prejudiced by setting aside the default judgment than Subway Development would be if the default was not set aside.

During the hearing on the motion to set aside the default judgment, David Loseman, an attorney for Doctor's and Subway Development, admitted that they had received a copy of the complaint and the summons by January 19, 1995.  He further admitted that Subway Development's response was not to file an answer in Illinois but to file a demand for arbitration with the American Arbitration Association and a petition for a preliminary injunction in Connecticut­ on January 20, 1995, knowing full well that a Madison County circuit judge had previously ruled that the arbitration clause was void and unenforceable.  The following colloquy between the defendants' attorneys and the circuit court is enlightening:

"THE COURT:  Why would you request an injunction in an arbitration against a defendant that you now claimed had not been served?           
 
       

MR. LOSEMAN:  Your Honor, we knew the lawsuit was pending.  We [d]id not know when they had been served or if, but we knew the lawsuit had been pending, or was filed, and if they hadn't been served yet[,] we knew service was eminent [
sic
].  We knew some of the other defendants had been served, so we thought two defendants are served and [the plaintiffs' attorney] is good about getting everything served quickly.

THE COURT:  What sort of strikes me is[,] since we are talking about gentleman's conduct, he who lives by a sword die[s] by the sword, and while you're begging for gentlemanly conduct, you took a risk by going to Connecticut, and you lost.  

MR. WILLIAMS:  Well, I don't think it's that simple.  I'll tell you why.  I think that as [Mr. Loseman] just pointed out, you know, he used the date of January 11th, '95 as being the date that we had notice of a lawsuit.  We filed the entry of appearance on February 10, which is within the 30 days.  It is questionable whether service on a secretary of the Attorney General's [o]ffice is proper service, but in any event, even if it is, what you're talking about is the difference of about four days.  

THE COURT:  But the delay was to your benefit to attempt to get the jurisdiction in effect of this Court stopped.

***

THE COURT:  I mean, what you're doing is playing fast and loose with the jurisdiction of this [c]ourt knowing full well apparently that Judge O'Neill in this court has ruled the arbitration clause to be not valid, right?

MR. WILLIAMS:  From what–

THE COURT:  There is a ruling of this [c]ourt that the foundation of your action in Connecticut is not valid.

MR. WILLIAMS:  And the [district court] has found that it is, Your Honor.  And so that's what's the dispute in front of the Appellate Court.  It's not a flaunting of Judge O'Neill's ruling.  It's a divergence of rulings between the [district court] *** as well as Judge O'Neill's decisions.  It's all a divergence of the two courts.

THE COURT:  Knowing that the Attorney General has been appointed as agent for service of process, under the statute, did you at any time check with the Attorney General's [o]ffice to see if they had been served?

MR. LOSEMAN:  No, Your Honor.

***

THE COURT:  Well, it's obviously not the normal case.  This is not the normal case.  There is one question which I wish to check on first, and that's the service on the secretary of the Attorney General and the validity of proceeding in this manner.  I will, as I've stated previously, state for the record at this time what I feel to be one of the more compelling facts in this case is that immediate action was taken on behalf of [Doctor's] in Connecticut.  So this is not[–]it strikes the [c]ourt, at least in view of the adverse ruling previously entered by Judge O'Neill, that it appears that this is a gamble on the part of the defendants.  I will take the case under advisement."

The circuit court later entered an order denying the defendants' motion to set aside the default judgment.  

The circuit court concluded that the plaintiffs would be "absolutely prejudiced" if the default judgment was set aside because the case was stayed in district court and the plaintiffs would be unable to have their day in court in Illinois.  The plaintiffs would be forced into arbitration in Connecticut even though the Madison County circuit court had previously determined that the arbitration clauses contained in the franchise agreements were void.  While we are aware that a default judgment is a drastic remedy which should be used with great caution, under the circumstances presented here, we cannot say the trial court's decision to refuse to set aside the default judgment was an abuse of discretion.  

C. Damages

We now address the award of $400,000 entered in this case.  Subway Development insists that even if the circuit court properly denied the motion to set aside the default, it was entitled to an evidentiary hearing on the issue of damages.  The plaintiff responds that the circuit court did not err in refusing to grant Subway Development's motion for an evidentiary hearing on the issue of damages because the record establishes that such a hearing would not have occurred, since Subway Development, acting through Doctor's, would have sought to obtain another injunction against the plaintiffs and the Illinois court before an evidentiary hearing could have taken place.  After a careful consideration of the record before us, we find that the award of damages must be vacated and the cause remanded for a hearing on damages.

Pursuant to section 2-1206(a) of the Code, even a party held in default has a right to have the issue of damages tried by a jury.  735 ILCS 5/2-1206(a) (West 1994).  It is well established that a judgment for unliquidated damages cannot be entered without establishing the fair amount of those damages.  
Nye v. Parkway Bank & Trust Co.
, 114 Ill. App. 3d 272, 276, 448 N.E.2d 918, 921 (1983).  The Illinois Supreme Court explained, "Although defaulted, where the action is in tort or for an unliquidated claim or amount, a defendant nonetheless has the right to be heard on the matter of damages."  
Elfman v. Evanston Bus Co.
, 27 Ill. 2d 609, 614, 190 N.E.2d 348, 351 (1963).  

Here, Subway Development was not heard on the issue of damages.  As a part of the default judgment entered on February 7, 1995, the circuit court scheduled a damages hearing for April 4, 1995.  When that date arrived, the circuit court did not conduct a hearing on damages but instead held a hearing on the motion to set aside the default judgment.  During that hearing, the plaintiffs' attorney advised the trial court that because of an injunction issued by the district court, the plaintiffs were not asking for any damages at that time.  The plaintiffs' attorney explained as follows:

"[A]s to this hearing today, we are not asking for any damages.  As a matter of fact, we are enjoined from asking for damages.  The only exception to the injunction is they can ask to set aside the default judgment, which we feel is inappropriate, but that was an issue on appeal in the federal system, so there is no request for actual damages or punitive damages or anything here, just that this default judgment which was appropriate under the circumstances [
sic
]."

Six months later, on November 16, 1995, during a follow-up hearing on the motion to set aside the default judgment, one of the other attorneys for the plaintiffs told the circuit court that in April 1995 the plaintiffs submitted an affidavit of damages.  

The plaintiffs' attorney moved to separate the issue of punitive damages and asked that a $400,000 default be entered upon the issuance of a mandate by the district court lifting the injunction.  The only evidence in support of such an award is contained in the affidavit of Sandra Bickel filed on March 15, 1995, as an attachment to the plaintiffs' response to the motion to vacate the default judgment.  The affidavit was not filed in support of a damages claim but, rather, for the express purpose of opposing the motion to set aside the default.  The affidavit stated, "Plaintiffs, Sandra and Raymond Bickel, in the Madison County, IL[,] case[] were damaged because of their lost investment in the Subway stores, the lost income from those stores[,] and the lost value of those stores in the sum of $400,000."  The plaintiffs submitted a proposed judgment awarding them $400,000.

In response to the proposed judgment, Subway Development's attorney argued that damages could not be set at that time because the federal injunction was still in effect, and the attorney asked that if the circuit court chose not to set aside the default, Subway Development be allowed "a jury trial on the issue of damages at a later time."  Neither a jury trial nor any type of hearing on the issue of damages transpired.  Rather, on December 7, 1995, the circuit court entered the plaintiffs' proposed judgment, awarding the plaintiffs $400,000 in compensatory damages.

After careful consideration, we agree with Subway Development that it is entitled to a hearing on the issue of damages.  While the plaintiffs argue that the circuit court was merely exercising its discretion in accepting Sandra Bickel's March 15, 1995, affidavit as substantive evidence because the circuit court was convinced that an evidentiary hearing could not be scheduled because one of the defendants would seek an injunction, the record does not support this contention.  At the time the affidavit was submitted, the plaintiffs' attorney specifically advised the circuit court that the plaintiffs were not seeking damages, but six months later another one of the plaintiffs' attorneys claimed that the previously submitted affidavit established actual damages in the amount of $400,000.  

An award of $400,000 is not to be left to the total discretion of the circuit court but requires evidence of actual damages.  Ms. Bickel did not appear to testify, and Subway Development was given no opportunity to cross-examine her or submit its own evidence on the issue of damages.  Subway Development asked for a jury trial on the issue of damages and never waived its jury demand.  Accordingly, we find that the award must be set aside and the cause remanded for a hearing on the issue of damages as requested by Subway Development.    

D. 
Res Judicata
/Collateral Estoppel 

Finally, we address Subway Development's assertion that the plaintiff is barred under the doctrines of 
res judicata
 and/or collateral estoppel from seeking to enforce the default judgment against Subway Development, due to the arbitration award.  Subway Development insists that the district court's decision to confirm the arbitration award as a binding judgment precludes the instant lawsuit.  We disagree.

The preclusive effect of a prior adjudication on a subsequent claim or cause of action falls under the law of 
res judicata.  Res judicata
 is separated into two distinct doctrines: (1) true 
res judicata
, known as "claim preclusion," and (2) collateral estoppel, known as "issue preclusion."  
People v. Moore
, 184 Ill. App. 3d 102, 104, 539 N.E.2d 1380, 1381 (1989), 
rev'd on other grounds
, 138 Ill. 2d 162, 561 N.E.2d 648 (1990).  Both serve the same purpose, which is promoting judicial economy and preventing repetitive litigation.  
Moore
, 184 Ill. App. 3d at 104, 539 N.E.2d at 1381.  Collateral estoppel applies when a party participates in two separate and consecutive cases arising out of different causes of action and some controlling factor or question material to the determination of both cases has been adjudicated against the party in the former suit by a court of competent jurisdiction.  
Stathis v. First Arlington National Bank
, 226 Ill. App. 3d 47, 53, 589 N.E.2d 625, 630 (1992).  However, 
res judicata
 will not apply in cases in which it would be fundamentally unfair to do so, and parties will not be collaterally estopped unless the precise facts and issues were clearly determined in the prior judgment.  
Nowak v. St. Rita High School
, 197 Ill. 2d 381, 390-91, 757 N.E.2d 471, 477-78 (2001).  

While Illinois public policy favors arbitration and consistency with other states in the enforcement and interpretation of arbitration agreements (
Reed v. Doctor's Associates, Inc.
, 331 Ill. App. 3d 618, 621-22, 772 N.E.2d 372, 375 (2002)), the instant case presents a unique set of facts.  
The plaintiff did not have an arbitration agreement with Subway Development, and Subway Development was not a party to the arbitration demand or petition to compel arbitration filed by Doctor's.  The default judgment was entered on February 7, 1995, while the arbitration award was not issued until May 2003.  The plaintiff is entitled to interest from the date the judgment was entered on February 7, 1995.  We find that it would be fundamentally unfair to bind the plaintiff to the arbitration award rendered more than seven years after the original default judgment was entered, especially in light of Doctor's and Subway Development's clear attempts to circumvent Illinois jurisdiction as outlined in the second part of our analysis.  

III. CONCLUSION

In conclusion, we find that Subway Development waived any objection to the method or manner of service and that the trial court did not abuse its discretion in refusing to set aside the default judgment under the facts presented here.  Accordingly, we affirm the liability portion of the judgment of the circuit court of Madison County.  As to the circuit court's award of $400,000, we find that the award must be vacated and the cause remanded for a hearing on the issue of damages.  At this juncture, we feel compelled to state the obvious.  This case has gone on entirely too long, with both sides bearing responsibility for delays caused by legal maneuvering and one-upmanship.  It is time for all the parties to work toward a definitive resolution on the issue of damages and put an end to this litigation.  

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed in part and vacated in part, and the cause is remanded with directions. 

  

Affirmed in part and vacated in part; cause remanded with directions.

CHAPMAN and WELCH, JJ., concur.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 12/15/04.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.