FEINBERG, Circuit Judge:
 

 Plaintiff-appellee Doctor’s Associates, Inc. (DAI), a Florida corporation, is the national franchisor of “Subway” sandwich shops. Defendants-appellants, present and former Subway franchisees, appeal from orders of the United States District Court for the District of Connecticut, Peter C. Dorsey, Chief Judge, dated February 14, 1996, and March 14, 1996, both published at 944 F.Supp. 1010 (D.Conn.1996), granting petitions by DAI to compel arbitration of claims the franchisees filed against DAI in various state courts. (The term “the franchisees” is used in this opinion to designate those Subway franchisees who brought state court actions against DAI and were named below as respondents in DATs petitions to compel arbitration.) For reasons set forth below, we affirm. In a related appeal, No. 96-7011, the franchisees also challenge the district court’s preliminary injunction dated January 3, 1996, enjoining them from prosecuting their state suits against DAI. By separate order filed today, we dismiss that appeal as moot.
 

 We are not the first panel of this court to encounter an appeal by groups of Subway franchisees, represented by attorney David M. Duree, involving similar — if not identical — facts and legal issues regarding arbitration of disputes with DAI. We have already remanded once in this ease,
 
 Doctor’s Associates, Inc. v. Distajo,
 
 66 F.3d 438 (2d Cir. 1995),
 
 cert. denied,
 
 — U.S.—, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996)
 
 (Distajo
 
 I), and two other panels have since affirmed orders granting DATs petitions to compel arbitration of claims by other Subway franchisees.
 
 Doctor’s Associates, Inc. v. Stuart,
 
 85 F.3d 975 (2d Cir.1996);
 
 Doctor’s Associates, Inc. v. Jabush,
 
 89 F.3d 109 (2d Cir.1996). At least one other appeal is pending in this court from a decision compelling franchisees to arbitrate disputes with DAI.
 
 Doctor’s Associates, Inc. v. Riggs,
 
 No. 96-9141 (argument not yet scheduled). The parties have also waged battles in various other courts across the country. See
 
 Distajo I,
 
 66 F.3d at 441 n. 1 (listing other DAI/franchisee litigation). After the franchisees submitted their initial brief in this appeal, we issued our opinion in
 
 Stuart,
 
 which, as discussed below, controls some of the legal issues raised in this appeal. Our decision today resolves several other legal issues in this bitter litigation.
 

 I. Facts and Prior Proceedings
 

 When purchasing franchises from DAI,
 
 *-1448
 
 each franchisee-defendant
 
 [1]
 
 executed a standard franchise agreement which requires the parties to arbitrate claims arising under the agreement.
 
 [2]
 
 Most of the franchise agreements state that they are governed by Connecticut law. Each franchisee-defendant also entered into a standard sublease with a leasing company affiliated with DAI. The sublease, which does not contain an arbitration clause, includes a “cross-default” provision, which allows the leasing company to evict a franchisee for violations of either the sublease
 
 or
 
 the franchise agreement.
 
 [3]
 

 Between 1991 and 1993, many disputes arose between DAI and the franchisees regarding rents, royalties and advertising fees due under the franchise agreements and subleases. To recover these monies, DAI instructed its leasing companies to file eviction actions, primarily in Illinois state court, against certain franchisees. In addition, all franchisees except the Kanes and Bickels claim that DAI routinely threatened to bring such eviction proceedings to recover alleged unpaid fees and rents.
 

 Several months to one year after the close of these eviction proceedings, each franchisee filed a nearly identical action against DAI in state court in either Illinois, Pennsylvania, Massachusetts or North Carolina. Each suit alleged, among other things, (1) fraud with respect to DATs policies of operating through assetless leasing companies, avoiding arbitration through use of eviction proceedings, and withholding business information from franchisees, (2) breach of contract for DATs failure to arbitrate the disputes underlying the eviction actions, and for various unrelated violations of the franchise agreements, and (3) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Franchise Disclosure Act and the Lanham Act. Each franchisee requested compensation and substantial punitive damages.
 

 Upon notice of each case filed by a franchisee, DAI immediately filed a written demand for arbitration with the American Arbitration Association in accordance with that body’s Commercial Arbitration Rules (AAA Rules). When the franchisees refused to arbitrate their disputes, DAI filed the present petitions to compel arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 4. The franchisees conceded that their claims in state court raise arbitrable issues under the arbitration clause in the franchise agreements. However, they argued, among other things, that DAI fraudulently induced the arbitration clause and that DAI waived its right to arbitrate by filing or threatening to file the prior eviction actions.
 

 In November 1994, the district court granted most of DATs petitions to compel arbitration.
 
 [4]
 
 It rejected the franchisees’ ar
 
 *-1447
 
 guments that the arbitration agreement was void for lack of mutuality or as a contract of adhesion, that the agreement was unconscionable, and that DAI had waived its right to arbitrate. The court also held that the franchisees’ defense of fraudulent inducement should be decided by the arbitrator. By order dated December 9, 1994, the court enjoined the franchisees from prosecuting their state court actions, in order to effectuate the judgment compelling arbitration, see 28 U.S.C. § 2288.
 

 The franchisees appealed both orders to this court. In September 1995, we issued an opinion
 
 (.Distajo T)
 
 affirming and reversing in part. We upheld the district court’s rulings (1) that it had subject matter (diversity) jurisdiction, (2) that judgments the franchisees had obtained against DAI in their Illinois and North Carolina state suits were not entitled to preclusive effect, and (3) that the arbitration clause was not void for lack of mutuality. On the other hand, we vacated the district court’s ruling rejecting the franchisees’ waiver defense to arbitration and instructed that on remand the district court should determine whether (1) “the leasing companies were mere alter egos of DAI,” (2) “prosecution of those eviction actions constituted litigation of ‘substantial issues going to the merits,’” and (3) “the franchisees suffered prejudice from the eviction proceedings.” We also held that on remand, the district court — rather than the arbitrator— should determine whether DAI fraudulently induced the arbitration clause. Finally, we vacated the preliminary injunctions.
 

 After the district court conducted further proceedings on remand, it filed opinions on February 14 and March 14, 1996, again granting DATs petitions to compel arbitration. The court held that (1) the franchisees had not submitted sufficient evidentiary facts to entitle them to a jury trial on their defenses to arbitration, 944 F.Supp. at 1013-14, 1015-16, (2) DAI had not waived its right to arbitrate by bringing or threatening to bring eviction proceedings,
 
 id.
 
 at 1018-22, (3) DAI had not fraudulently induced the arbitration clause,
 
 id.
 
 at 1017-18, and (4) there was no reason for the district court to abstain based on the franchisees’ state court litigation,
 
 id.
 
 at 1022-23. The franchisees challenge all of these rulings, and raise the additional arguments that (1) issues of fact remain with respect to their defenses that the arbitration clause is unconscionable and fails to meet their reasonable expectations, (2) the district court erred by entering preliminary injunctions on January 3 and March 14,1996, without requiring DAI to post bonds, (3) the district court lacked subject matter jurisdiction to compel arbitration, and (4) the district court lacked personal jurisdiction over the Kanchwalas.
 

 II. Demand for a Jury Trial
 

 The franchisees argue that the district court erred in denying them a jury trial under 9 U.S.C. § 4 on their defenses of fraud, waiver, unconscionability and failure of the contract to meet their reasonable expectations. In February 1996, the district court granted DATs motion to forgo trial and decide these issues as a matter of law, finding that the franchisees had not shown that material facts were in dispute with respect to their defenses of fraud and waiver.
 
 [5]
 
 944 F.Supp. at 1013-15. The franchisees then filed additional affidavits purportedly substantiating these defenses, and moved for reconsideration. In March, the district court denied that motion, observing that the franchisees had waited five to 23 months from the time DAI filed its petitions to submit such affidavits.
 
 Id.
 
 at 1016. Nevertheless, the court agreed to consider the facts alleged in their “belated” affidavits in ruling on their defenses as a matter of law.
 
 Id.
 

 Although a party may demand a jury trial when issues • respecting arbitrability are “in issue,” 9 U.S.C. § 4, we have cautioned that “[a] party resisting arbitration ... ‘bears the burden of showing that he is entitled to a jury trial.’”
 
 Stuart,
 
 85 F.3d at 983 (citing
 
 Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
 
 961 F.2d 1148, 1154 (5th Cir. 1992)). As when opposing a motion for summary judgment under Fed.R.Civ.P. 56, the party requesting a jury trial must “submit
 
 *-1446
 
 evidentiary facts showing that there is a dispute of fact to be tried.”
 
 Oppenheimer & Co., Inc. v. Neidhardt,
 
 56 F.3d 352, 358 (2d Cir.1995);
 
 Stuart,
 
 85 F.3d at 983-84 (party must demonstrate a “genuine” issue); see
 
 Manning v. Energy Conversion Devices, Inc.,
 
 833 F.2d 1096, 1103 (2d Cir.1987).
 

 Even after conducting discovery on their defenses, the franchisees have failed to satisfy this burden. The district court diligently complied with our direction in
 
 Distajo I
 
 that it “consider[ ]” the franchisees’ jury demands. 66 F.3d at 456 n. 13. As discussed separately below, the franchisees have not shown, even in their most recent affidavits, that material facts are in dispute regarding their fraud and waiver defenses. Moreover, by submitting the bulk of their affidavits at the last minute, the franchisees utterly failed to “alert [the] district courtf] promptly and fully” to the facts underlying these claims.
 
 Manning,
 
 833 F.2d at 1103. We thus affirm the district court’s decision to proceed without a jury trial and rule on the defenses as a matter of law.
 

 III. Waiver of the Right to Compel Arbitration
 

 All the franchisees except the Bickels and Kanes argue that DAI waived its right to compel arbitration of their state-court claims based on DATs conduct in connection with prior litigation proceedings. Specifically, DAI obtained judgments of eviction against certain franchisees.
 
 [6]
 
 944 F.Supp. at 1019-20. Brenes, the Rothmunds and the Kanchwalas all lost their franchises as a result of these eviction proceedings. Eviction actions against another group of franchisees
 
 [7]
 
 were dismissed at an early stage because, under state law, DATs unregistered leasing companies could not file lawsuits in the relevant states.
 
 Id.
 
 DAI has never filed eviction proceedings against a third group of franchisees.
 
 [8]
 

 Id.
 
 at 1019. However, the franchisee-defendants (except the Kanes and Bickels) allege that DAI routinely threatened them with eviction in order to resolve its claims under the franchise agreements and subleases. The district court found that there were no material issues of fact in dispute, and held that as- a matter of law DAI did not waive its right to compel arbitration of franchisees’ claims. 944 F.Supp. at 1020-22. We agree.
 

 We review de novo the issue whether a party waived its right to compel arbitration.
 
 Stuart,
 
 85 F.3d at 981 (citing
 
 Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,
 
 67 F.3d 20, 25 (2d Cir.1995)). “The factual determinations upon which to base the waiver determination, however, will not be reversed unless clearly erroneous.”
 
 Stuart,
 
 85 F.3d at 981. Because of the strong federal policy favoring arbitration, courts resolve doubts as to whether waiver occurred in favor of arbitration.
 
 Id.
 
 (citing
 
 Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,
 
 460 U.S. 1, 24-25, 103 S.Ct. 927, 941 — 42, 74 L.Ed.2d 765 (1988)). In
 
 Stuart,
 
 we cautioned that “[t]he waiver determination must be based on the circumstances and context of the particular case, “with a healthy regard for the policy of promoting arbitration.’”
 
 Stuart,
 
 85 F.3d at 981(quoting
 
 Leadertex,
 
 67 F.3d at 25).
 

 On appeal, the franchisees make an elaborate argument that either Illinois or Connecticut law should apply, or at least “have some significance,” on the waiver issue. However, they apparently waived this choice-of-law argument by not raising it in the district court. In any event, the Supreme Court has held that the FAA creates a “body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.”
 
 Moses Cone,
 
 460 U.S. at 24, 103 S.Ct. at 941;
 
 National Union Fire Ins. Co. of Pittsburgh v. Belco Petroleum Corp.,
 
 88 F.3d 129, 133 (2d Cir.1996); see
 
 *-1445
 

 Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lecopulos,
 
 553 F.2d 842, 845 n. 4 (2d Cir.1977) (applying federal law to waiver issue). The franchisees do not contest that the FAA applies to this dispute, nor could they because the franchise agreements between DAI, a Florida corporation, and franchisees from various other states “evidenee[ ] a transaction involving commerce.” 9 U.S.C. §§ 1, 2;
 
 Allied-Bruce Terminix Comps. v. Dobson,
 
 513 U.S. 265, 274-78, 115 S.Ct. 834, 840-41, 130 L.Ed.2d 753 (1995) (§ 2’s “involving commerce” standard reaches to limits of Commerce Clause power). As we recently explained, even the inclusion in the contract of a general choice-of-law clause does not require application of state law to arbitrability issues, unless it is clear that the parties intended state arbitration law to apply on a particular issue. See
 
 Belco,
 
 88 F.3d at 134-35 (citing
 
 Mastrobuono v. Shearson Lehman Hutton, Inc.,
 
 514 U.S. 52,— - —, 115 S.Ct. 1212, 1217-19, 131 L.Ed.2d 76 (1995)).
 

 We have often stated the general rule that waiver of the right to arbitrate occurs when a party “engages in protracted litigation that results in prejudice to the opposing party.”
 
 Cotton v. Slone,
 
 4 F.3d 176, 179 (2d Cir.1993) (citing
 
 Kramer v. Hammond,
 
 943 F.2d 176, 179 (2d Cir.1991));
 
 Sweater Bee By Banff, Ltd. v. Manhattan Indus.,
 
 754 F.2d 457, 461 (2d Cir.1985) (“[L]itigation of substantial issues going to the merits may constitute a waiver of arbitration.”). The “prejudice” that supports a finding of waiver can be “substantive” prejudice to the legal position of the party opposing arbitration, such as when the party seeking arbitration “loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration,”
 
 Kramer,
 
 943 F.2d at 179, or obtains information through discovery procedures not available in arbitration,
 
 Cotton,
 
 4 F.3d at 179. Additionally, we have held that a party may be prejudiced by the “unnecessary delay or expense” that results when an opponent delays invocation of its contractual right to arbitrate.
 
 Id.
 
 (citing
 
 Kramer,
 
 943 F.2d at 179).
 

 Initially, we must determine the effect of our opinion in
 
 Distajo I
 
 on resolution of the franchisees’ waiver arguments. DAI argues on appeal that, in the eviction proceedings, it' did not litigate “substantial issues going to the merits” of the franchisees’ current claims. The franchisees vigorously contend that the doctrine of “law of the case” prevents our reaching this argument because we stated in
 
 Distajo I
 
 that
 

 [i]f the alleged violations of the subleases were premised on violations of the franchise agreement (which DAI was contractually bound to resolve through arbitration) then DAI did litigate substantial issues going to the merits, and the only remaining question will be whether the franchisees suffered prejudice from the eviction proceedings.
 
 [9]
 

 Distajo I,
 
 66 F.3d at 457. The district court rejected the franchisees’ waiver defense solely on the ground that they had not proven sufficient prejudice. 944 F.Supp. at 1019-21.
 

 We do not believe we are so constrained. The doctrine of “law of the case” instructs that “ ‘if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case.’ ”
 
 Sagendorf-Teal v. County of Rensselaer,
 
 100 F.3d 270, 277 (2d Cir.1996) (citing
 
 DiLaura v. Power Authority of State of New York,
 
 982 F.2d 73, 76 (2d Cir.1992)). However, the doctrine “is, at best, a discretionary doctrine, which does not constitute a limitation on the court’s power but merely expresses the general practice of refusing to reopen what has been decided.”
 
 United States v. Martinez,
 
 987 F.2d 920, 923 (2d Cir.1993) (citations and internal quotations omitted). For instance, a court may properly reconsider a prior statement of law when new evidence indicates that its prior view was unsound. See
 
 Sagendorf-Teal,
 
 100 F.3d at 277.
 

 In
 
 Distajo I,
 
 responding to two issues raised by the district court’s November 1994 order compelling arbitration, we focused on
 
 *-1444
 
 (1) the relationship between DAI and the leasing companies that filed the eviction proceedings, and (2) whether the court or the arbitrator should rule on the franchisees’ waiver defense. After a thorough discussion •of the latter issue, we held that the district court should decide whether DAI had waived arbitration. 66 F.3d at 453-56. We apparently assumed that the franchisees brought their state suits in direct response to DATs eviction actions, and that their state suits and the eviction actions raised identical issues. However, DAI argues — without contradiction from the franchisees — that neither the parties nor the court focused in that appeal on the similarity (or lack thereof) of the issues raised in DATs eviction actions and the franchisees’ state suits. This factor is, of course, significant in considering whether DAI litigated “substantial issues going to the merits” of the claims it now seeks to arbitrate. In view of our clearer understanding now, after remand, of the nature and scope of prior litigation by DAI, it would serve no justifiable purpose to adhere blindly to a statement in
 
 Distajo I
 
 that was based on an incomplete picture of the relevant facts.
 
 [10]
 
 Cf.
 
 Cotton,
 
 4 F.3d at 179 (waiver “necessarily depends upon the facts of the particular case”). We thus feel compelled to explore more fully whether DAI engaged in the type of prior litigation which results in waiver of its right to arbitrate.
 

 First, we can easily dispose of the argument that DAI waived its right to arbitrate claims brought by franchisees against whom DAI never instituted eviction proceedings. In
 
 Stuart,
 
 we held that DAI “obviously” had not waived its right to arbitrate claims brought by franchisees against whom DAI had never instituted ‘“particular eviction proceedings.’ ”
 
 Stuart,
 
 85 F.3d at 982. The franchisees nevertheless insist that waiver occurred when, unlike in
 
 Stuart,
 
 DAI
 
 threatened
 
 certain franchisees with eviction, allegedly to “extort” payments from them. However, mere threats of litigation do not even
 

 constitute “litigation,” and thus certainly cannot be considered “substantial litigation on the merits” for waiver analysis. Cf.
 
 Lawrence v. Comprehensive Bus. Servs. Co.,
 
 833 F.2d 1159, 1165 (5th Cir.1987) (statement suggesting party would not arbitrate did not “constitute
 
 action
 
 inconsistent with arbitration”).
 

 The remaining franchisees’ waiver defenses also fail. We first note that the district court found that DATs eviction actions against certain franchisees (listed above) were dismissed at an early stage, before any adjudication of the merits occurred.
 
 [11]
 
 944 F.Supp. at 1019-20. DATs participation in these suits did not constitute “protracted” litigation, which could result in a waiver of its right to arbitrate. Compare
 
 Leadertex,
 
 67 F.3d at 26 (waiver when defendant engaged in “energetic pursuit of discovery” for seven months and requested arbitration “at the eleventh hour” before trial), and
 
 Cotton, 4
 
 F.3d at 179-80 (waiver when defendant “actively litigated” dispute by taking depositions and making substantive motions), with
 
 Leco-pulos,
 
 553 F.2d at 845 (filing an action does not waive arbitration, at least until opponent “has answered on the merits”).
 

 In any event, we hold that DAI did not waive its right to arbitrate because in none of the eviction proceedings — even those four actions in which DAI won judgments of eviction — did DAI engage in litigation on the merits of the issues now raised in the franchisees’ state suits. DAI persuasively argues that
 

 [tjhere is no conceivable policy justification for a rule that, by exercising the reasonable business judgment to sue to evict someone from leased premises or to collect a debt of less than $10,000, a party waives for all time its right to arbitrate every other dispute imaginable, including multimillion dollar punitive damage claims of
 
 *-1443
 
 which the party has no knowledge when it files the eviction action.
 

 Moreover, our prior decisions do not compel a finding of waiver here. If anything, they support the view that only prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate. In
 
 Gilmore v. Shearson/Am. Express, Inc.,
 
 811 F.2d 108 (2d Cir.1987), we clearly suggested that defendant Shearson’s explicit waiver of its right to arbitrate certain claims would not necessarily waive arbitration of other claims raised in an amended complaint filed after Shearson agreed to this waiver.
 
 Id.
 
 at 113. We held that because the amended complaint did not “alter the scope or theory” of the claims as to which Shearson had already waived arbitration, Shearson could not renounce its waiver and compel arbitration.
 
 Id.
 
 at 114; cf.
 
 Kramer,
 
 943 F.2d at 178 (waiver based in part on party’s prior litigation in an “identical” suit);
 
 Shearson Lehman Hutton, Inc. v. Wagoner,
 
 944 F.2d 114, 122 (2d Cir.1991) (no waiver when prior litigation was brought by a separate party and involved “legally distinct claims”).
 

 Other circuits seem to agree that waiver can only occur when a party has previously litigated the same claims it now seeks to arbitrate. The Seventh Circuit has held that a franchisor who brought an unlawful detain-er action against its franchisee had not waived its right to arbitrate other claims brought by the franchisee — including breach of contract, failure to pay royalties and advertising fees, and several Lanham Act claims — because the two suits “involved different issues.”
 
 Gingiss Int'l Inc. v. Bormet,
 
 58 F.3d 328, 330-332 (7th Cir.1995); but see
 
 Midwest Window Sys., Inc. v. Amcor Indus., Inc.,
 
 630 F.2d 535, 537 (7th Cir.1980). Similarly, in
 
 Lawrence,
 
 Judge Alvin B. Rubin held that a franchisor, who had previously secured a judgment against a franchisee to recover $5,000 for services provided, had not waived its right to arbitrate subsequent claims by the franchisee that the franchise agreement was illegal and unenforceable.
 
 Lawrence,
 
 833 F.2d at 1164-65 (earlier action had not “prejudiced their present claim”). Finding waiver where a party has previously litigated an unrelated yet arbitrable dispute would effectively abrogate an arbitration clause once a party had litigated
 
 any
 
 issue relating to the underlying contract containing the arbitration clause.
 

 The franchisees apparently argue that even under this rule we should find waiver because their current suits and the eviction actions “aris[e] out of the same core facts, i.e., the franchise agreement and franchise relationship.” We disagree. According to DAI, the eviction actions were simple collection proceedings to ’recover relatively small amounts of unpaid fees and rents under the franchise agreements and subleases. The only issues involved in these disputes pertained to whether (and how much) the franchisees owed DAI. In contrast, the franchisees’ state suits, filed several months to one year after the evictions, allege various violations by DAI of the franchise agreement and attack the validity of the franchise agreement and arbitration clause on a host of different federal and state law grounds. Significantly, the franchisees did not raise these claims as counterclaims in the eviction actions, nor do they now dispute that they owed the fees and/or rents which DAI sought to collect by filing eviction actions. Thus, the district court properly found that “the disputes involved in the eviction actions are not the same as the disputes involved in the franchisees’ state court actions.” 944 F.Supp. at 1022. In view of the strong federal policy of enforcing agreements to resolve disputes through arbitration, we find that DAI did not litigate substantial issues going to the merits of the franchisees’ current claims, and thus did not waive arbitration.
 

 Finally, the franchisees argue strenuously that they suffered various types of prejudice from these evictions, including the legal expense of defending the actions, the risk of losing their entire investment in their franchises and, for some of the franchisees, the money judgments or actual loss of their stores. Strictly speaking, in view of our holding above, it is not necessary for us to decide whether the franchisees suffered prejudice from being subject to these eviction actions. It is nevertheless clear to us that
 
 *-1442
 
 they did not suffer the type of prejudice that supports a finding of waiver.
 

 We do not overlook the fact that several franchisees lost their entire investments in their franchises as a result of the judgments of possession DAI obtained. However, prejudice as defined by our cases refers to the inherent unfairness — in terms of delay, expense, or damage to a party’s legal position — that occurs when the party’s opponent forces it to litigate an issue and later seeks to arbitrate that same issue. Stated in these terms, the franchisees have not shown any prejudice warranting a finding of waiver. First, the franchisees admit that DAI did not delay in moving to compel arbitration of their present claims in state court. 944 F.Supp. at 1021. Moreover, legal expenses inherent to litigation, “without more,” do not constitute prejudice requiring a finding of waiver.
 
 Leadertex,
 
 67 F.3d at 26. Finally, the franchisees have not shown that they will suffer “substantive” prejudice to their state-court claims if they are forced to arbitrate. See
 
 Lawrence,
 
 833 F.2d at 1165. DAI has neither conducted discovery with respect to these claims nor made any motions going to the merits of the claims. Significantly, DAI has assured us that, in arbitration, it will not oppose any of the franchisees’ claims on res judicata or collateral estoppel grounds due to the franchisees’ failure to raise them in the prior eviction actions.
 

 On these facts, we hold that DAI did not waive its right to compel arbitration of the franchisees’ claims.
 

 IV. Fraudulent Inducement of the Arbitration Agreement
 

 The franchisees argue that the district court erred in rejecting, as a matter of law, their defense that DAI fraudulently induced them to accept the arbitration clause. Specifically, they claim that DAI (1) falsely represented in its offering circulars and franchise agreements that arbitration is a “condition precedent” to litigation, and (2) concealed the material fact that DAI “controls” its franchisees by instructing its as-setless leasing companies to threaten or institute eviction proceedings. The district court found — even after considering the franchisees’ last-minute affidavits — that there were no material issues of fact in dispute, and held that the franchisees had not “offered evidence from which it could be found” that DAI had made any false representations that induced their agreement to arbitrate. 944 F.Supp. at 1017-18.
 

 It is clear that a court, not an arbitrator, resolves a claim that an arbitration clause— as opposed to the contract as a whole — was fraudulently induced.
 
 Distajo I,
 
 66 F.3d at 457 (citing
 
 Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
 
 388 U.S. 395, 403-04, 87 S.Ct. 1801, 1805-06, 18 L.Ed.2d 1270 (1967)). We apply state law “concerning the validity, revocability, and enforceability of contracts generally” to the issue whether DAI fraudulently induced the arbitration agreement. See
 
 Perry v. Thomas,
 
 482 U.S. 483, 492 n. 9, 107 S.Ct. 2520, 2527 n. 9, 96 L.Ed.2d 426 (1987);
 
 Stuart,
 
 85 F.3d at 979-80 (applying, without discussion, Connecticut law to franchisees’ fraudulent inducement claim);
 
 Progressive Casualty Ins. Co. v. C.A. Reasegura-dora Nacional de Venezuela,
 
 991 F.2d 42, 45-46 (2d Cir.1993) (state law applies to whether parties agreed to arbitrate).
 

 The franchisees maintain that we should apply Illinois law on fraudulent inducement. The district court applied Connecticut law pursuant to the choice-of-law clause in most of the relevant franchise agreements. It noted with respect to certain franchisees, whose contracts designated Florida or Illinois law as controlling, that DAI claimed, “without contradiction, that Florida and Illinois law do[] not differ” from Connecticut law on fraudulent inducement. 944 F.Supp. at 1017 n. 2. Thus, the franchisees waived this issue, and, as in
 
 Distajo I,
 
 66 F.3d at 451, and
 
 Stuart,
 
 85 F.3d at 979-80, we apply Connecticut law to their fraud claims.
 

 It is well-settled under Connecticut law that to prove fraudulent inducement, a party must show “(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury.”
 
 Stuart,
 
 85 F.3d at 979 (citing
 
 Miller v. Apple by,
 
 183 Conn. 51, 438 A.2d 811, 813 (1981)).
 
 *-1441
 
 In
 
 Stuart,
 
 we held that Subway franchisees making similar allegations “utterly failed to allege, much less prove, sufficient facts indicating that they were defrauded into agreeing to arbitrate.”
 
 Stuart,
 
 85 F.3d at 980. We explained that before purchasing their franchise, each franchisee received copies of DATs standard franchise agreement and sublease, and that the relevant clauses pertaining to arbitration and eviction “were not camouflaged.”
 
 Id.
 
 We thus found that DAI had not made any false representations to the franchisees regarding the possibility of eviction for violation of the franchise agreement.
 

 The district court made identical factual findings in this case with respect to the franchisees’ access to copies of the franchise agreement and sublease and the contents of those documents. It concluded that “[a]t most, [the franchisees] lacked understanding of the ramifications of two documents which they had ample opportunity to read and understand _ They cannot hold DAI as misrepresenting what is plainly stated in the documents nor the legal ramifications thereof.” 944 F.Supp. at 1018; ■ see
 
 Stuart,
 
 85 F.3d at 980.
 

 On this record, we too “find that the district court properly held, as a matter of law, that DAI did not fraudulently induce [the franchisees] into signing the agreement to arbitrate.”
 
 Id.
 

 V. Unconscionability and Failure of the Contract to Meet the Parties’ Reasonable Expectations
 

 The franchisees argue that issues of fact remain with respect to their defenses that the arbitration clause is void and unenforceable because it is (1) unconscionable, and (2) fails to meet their reasonable contractual expectations, see Restatement (Second) of Contracts § 211. In their answers in the district court, most of which were filed in October 1994, the franchisees alleged that the franchise agreement was an adhesion contract that effectively forced them to arbitrate dis-' putes under the agreement, yet allowed DAI to resolve such disputes through eviction proceedings. They also complained that the contract did not mention the alleged “excessive” costs of arbitration.
 
 Id.
 

 The franchisees waived this argument by not raising it in the district court in their papers opposing DATs motion, filed in February 1996, to forgo trial and receive judgment as a matter of law on all defenses to arbitration. In any event, the franchisees’ claims are meritless. They urge us to “remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds ‘for the revocation of any contract.’ ”
 
 Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
 
 473 U.S. 614, 627, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444 (1985). Yet the franchisees have not presented a “well-supported” claim in this regard. In Doctor’s
 
 Associates, Inc. v. Jabush,
 
 89 F.3d 109 (2d Cir.1996), we rejected a claim by Subway franchisees, who had been sued by DAI in eviction proceedings, that the arbitration clause was unconscionable.
 
 Id.
 
 at 112-13. We explained that the franchisees were not unfairly surprised or oppressed by DATs resort to. eviction proceedings because the “plain terms” of the sublease authorized such action.
 
 Id.
 
 at 113 (citing
 
 David L. Threlkeld & Co. v. Metallge-sellschaft Ltd.,
 
 923 F.2d 245, 249 (2d Cir. 1991)). In
 
 Stuart,
 
 we rejected the franchisees’ argument that the costs of arbitration rendered the contract unconscionable, observing that the franchise agreement clearly stated that the franchisees would have to pay standard arbitration costs.
 
 Stuart,
 
 85 F.3d at 980-81. Thus, even if the franchisees had properly raised these arguments, they would fail under the reasoning of our prior cases.
 

 VI. Imposing Preliminary Injunctions Without Requiring a Bond
 

 The franchisees argue that the district court abused its discretion by issuing preliminary injunctions in January and March 1996, without requiring DAI to post bonds pursuant to Fed.R.Civ.P. 65(c). In January 1996, after our remand in
 
 Distajo I,
 
 the district court enjoined the franchisees from prosecuting their state cases, finding that this relief was “necessary in aid of’ federal jurisdiction. 944 F.Supp. 1007,1008-
 
 *-1440
 
 09 (citing 28 U.S.C. § 2283). In its March 14 order compelling arbitration, the district court continued the injunction to “effectuate” that order. 944 F.Supp. at 1023. The district court did not. require DAI to post a bond for either injunction because it found that the franchisees would not suffer damage 'or loss from being forced to arbitrate in lieu of prosecuting their state-court cases.
 

 Rule 65(c) states, in relevant part, that
 

 [n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.
 

 Id.
 
 In
 
 Stuart,
 
 we flatly rejected an identical argument that the district court should have required such a bond. Rule 65(c) gives the district court wide discretion to set the amount of a bond, and even to dispense with the bond requirement “where there has been no proof of likelihood of harm, or where the injunctive order was issued ‘to aid and preserve the court’s jurisdiction over the subject matter involved.’”
 
 Stuart,
 
 85 F.3d at 985 (citations omitted). As in
 
 Stuart,
 
 both circumstances apply in this case. We therefore hold that the district court did not abuse its discretion by entering the injunctions without requiring DAI to post bonds.
 

 VII. Personal Jurisdiction over the Kanchwala Franchisees
 

 The Kanchwala franchisees argue that the district court did not have personal jurisdiction over them. They allege that DAI violated 9 U.S.C. § 4 and Fed.R.Civ.P. 4(c) and 4(e)(1) by serving the Kanchwalas by mailing a copy of the summons and complaint to Mr. Duree, their attorney, instead of personally serving them. The Kanchwala franchisees also claim that the district court did not have personal jurisdiction and venue “by contract” because the validity of the arbitration contract was in dispute. They base this argument on the fact that in October 1995 an Illinois court held that the arbitration clause in the Kanchwalas’ franchise agreement was void and unenforceable. Finally, they argue that “at the very least” the district court should have held a hearing under Fed.R.Civ.P. 12(d) to determine personal jurisdiction.
 

 By not raising these issues in their papers filed in opposition to DATs motion for judgment as a matter of law and by failing to request in the district court a hearing under Rule 12(d), the Kanchwalas consented to personal jurisdiction. In any event, faced with identical arguments in
 
 Stuart,
 
 we applied the long-standing principle that a party who agrees to arbitrate in a state (such as Connecticut) in which the FAA makes arbitration agreements enforceable also consents to jurisdiction in whatever court could compel arbitration in that state.
 
 Stuart,
 
 85 F.3d at 979 (citing
 
 Victory Transp. Inc. v. Comisaria General de Abastecimientos y Transportes,
 
 336 F.2d 354, 363 (2d Cir.1964)). Moreover, we held that the AAA Rules, incorporated into all-Subway franchise agreements, governed service of process and specifically allowed service by mail on a party’s representative.
 
 Id.
 
 at 982. Finally, we decided that the district court had handled the question of personal jurisdiction correctly from a procedural point of view by holding a hearing on whether the arbitration agreement was enforceable.
 
 Id.;
 
 cf.
 
 AAACON Auto Transp., Inc. v. Klee,
 
 356 F.Supp. 319, 321 (S.D.N.Y. 1973) (district court may hold hearing to ascertain whether parties entered an agreement to arbitrate). We see no logical reason to reach a different result here, and thus hold that the district court did have personal jurisdiction over the Kanchwala franchisees.
 

 VIII. Rooker-Feldman Doctrine
 

 The franchisees argue, for the first time on appeal, that the district court lacked subject matter jurisdiction under the
 
 Rook-er-Feldman
 
 doctrine to order them to arbitrate and to enjoin them from prosecuting their state suits. They contend that DATs petitions to compel arbitration represent impermissible attempts to “avoid” judgments the, franchisees obtained in Illinois state court.
 

 After DAI filed petitions in the district court to compel arbitration, two Illinois courts issued orders granting summary judg
 
 *-1439
 
 ment to certain franchisees.
 
 Shino v. Doctor’s Associates, Inc.,
 
 No. 93-L-1293 (Cir. Ct. Madison County, Oct. 24, 1994);
 
 Kanchwala v. Doctor’s Associates, Inc.,
 
 No. 95-L1292 (Cir. Ct. Madison County, Oct. 13, 1995). The Illinois courts held that DAI waived its right to arbitrate claims by those franchisees against whom DAI had filed eviction actions. The courts also held that the arbitration clauses in the franchise agreements were void and unenforceable because they (1) were unconscionable, (2) failed to meet the parties’ reasonable contractual expectations, and (3) lacked mutuality.
 

 Some explanation of the tangled proceedings in the Bickel case is necessary. In December 1994, the Bickels filed an action against DAI in the Circuit Court of Madison County, Illinois, alleging fraud and various breaches of the franchise agreement and seeking a declaration that the arbitration clause was unenforceable. In mid-January 1995, DAI promptly filed both a demand with the AAA for arbitration of the Bickels’ claims and its present petition to compel arbitration. Because DAI did not appear in the Illinois action, the Bickels moved for and obtained from the Illinois court on February 7,1995, a default judgment against DAI. That court scheduled a damage hearing for April.
 

 Only days later, on February 13, the district court granted DATs petition to compel arbitration of the Bickels’ claims, and entered a preliminary injunction by endorsement enjoining the Bickels from further prosecuting their Illinois suit. In September 1995, in
 
 Distajo I,
 
 we reversed the district court’s order compelling arbitration and vacated the preliminary injunction.
 
 Distajo I,
 
 66 F.3d at 458. The mandate issued on November 29,1995.
 

 Thereafter, on December 5, 1995, the district court entered a temporary restraining order (TRO), again enjoining the Bickels from prosecuting their state suit. The Bick-els admit that they did not advise the Illinois court of this TRO. Consequently, on December 6, 1995, stating that it had been “advised” that our decision in
 
 Distajo I
 
 lifted the injunction against the Bickels, the Illinois court awarded the Bickels $400,000 in damages. The Bickels now argue that this $400,-000 state court judgment strips the district court of subject matter jurisdiction to entertain DATs petition to compel arbitration.
 

 A challenge to a federal court’s subject matter jurisdiction under the
 
 Rooker-Feld-man
 
 doctrine “may be raised at any time by either party or
 
 sua sponte
 
 by the court.”
 
 Moccio v. New York State Office of Court Admin.,
 
 95 F.3d 195, 198 (2d Cir.1996) (citing
 
 Ritter v. Ross,
 
 992 F.2d 750, 752 (7th Cir. 1993)). The doctrine evolved from the Supreme Court’s opinions in
 
 D.C. Court of Appeals v. Feldman,
 
 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), and
 
 Rooker v. Fidelity Trust Co.,
 
 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). It rests on the principle that “a United States District Court has no authority to review final judgments of a state court in judicial proceedings.”
 
 Feldman,
 
 460 U.S. at 482, 103 S.Ct. at 1315;
 
 Rooker,
 
 263 U.S. at 416, 44 S.Ct. at 150. The
 
 Feldman
 
 Court thus held that a district court lacked subject matter jurisdiction to entertain a federal suit attacking a state court judgment against a particular individual.
 
 Feldman,
 
 460 U.S. at 483-86, 103 S.Ct. at 1315-17. However, the Court held that a plaintiff could still bring in federal district court a general challenge to a state rule,
 
 id.,
 
 unless the issues raised were “inextricably intertwined” with those resolved in the state judgment against the individual,
 
 id.
 
 at 482 n. 16, 103 S.Ct. at 1315 n. 16.
 

 DAI complains that the franchisees’
 
 Rook-er-Feldman
 
 argument merely restates their argument on appeal in
 
 Distajo I
 
 that the district court should have given preclusive effect to state court judgments holding the franchise agreements to be void and unenforceable. We rejected that argument because the Illinois judgments were not final under that state’s rule until the time for appeal had expired, and therefore not entitled to preclusive effect.
 
 Distajo I,
 
 66 F.3d at 449-51.
 

 Nevertheless, we cannot dismiss the franchisees’
 
 Rooker-Feldman
 
 argument based on the preclusion analysis applied in
 
 Distajo I.
 
 We did recently hold that the
 
 Rooker-Feld-man
 
 doctrine “at a minimum” is coextensive with preclusion principles.
 
 Moccio,
 
 95 F.3d at 199-200. Thus, subsequent litigation in
 
 *-1438
 
 federal court “will be barred under the
 
 Rook-er-Feldman
 
 doctrine if it would be barred under the principles of preclusion.”
 
 Id.
 
 at 200. However, a district court may lack subject matter jurisdiction under the
 
 Rook-er-Feldman
 
 doctrine even when that court would not be precluded, under res judicata or collateral estoppel principles, by a prior state judgment. “It cannot be the meaning of
 
 Rooker-Feldman
 
 that, while the inferior federal courts are barred from reviewing
 
 final
 
 decisions of state courts, they are free to review interlocutory orders.”
 
 Campbell v. Greisberger,
 
 80 F.3d 703, 707 (2d Cir.1996)
 
 (Rooker-Feldman
 
 challenge to interlocutory order); Gentner v. Shulman, 55 F.3d 87, 89 (2d Cir.1995)
 
 (Rooker-Feldman
 
 applies whether an order is “final or interlocutory in nature”). Thus, our holding in
 
 Distajo I
 
 that preclusion did not - attach to Illinois judgments that were not final does not resolve the franchisees’
 
 Rooker-Feldman
 
 claim.
 

 Nevertheless, we hold that the
 
 Rooker-Feldman
 
 rationale does not bar jurisdiction over DATs petitions to compel arbitration. We cannot say that DAI is attempting to appeal from any of the state court decisions. See
 
 GASH Assoc. v. Village of Rosemont,
 
 995 F.2d 726, 728 (7th Cir.1993)
 
 (Rooker-Feldman
 
 prohibits a district court from exercising an appellate function over a state court). Indeed, DAI filed its petitions to compel arbitration of the franchisees’ state actions
 
 before
 
 the state courts had made any rulings on the merits in those actions. See
 
 Texaco, Inc. v. Pennzoil Co.,
 
 784 F.2d 1183, 1143 (2d Cir.1986),
 
 rev’d on other grounds,
 
 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987)
 
 (Rooker-Feldman
 
 applicable “[o]nce a litigant has received an adverse adjudication” on an issue);
 
 Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Doe,
 
 868 F.Supp. 532, 538 (S.D.N.Y.1994) (plaintiff was not seeking review of state court TRO because it filed its federal action before the state court issued the TRO). Moreover, with respect to the Bickels’ $400,000 default judgment, the Biek-els admit that they did not tell the Illinois court of the TRO entered by the district court after the remand in
 
 Distajo I.
 
 Finally, the parties have not cited, nor have we found, any cases applying the
 
 Rooker-Feldman
 
 doctrine to deprive a district court of subject matter jurisdiction over a petition to compel arbitration under 9 U.S.C. § 4. On these facts, we cannot say that the district court lacked jurisdiction under
 
 Rooker-Feldman
 
 to adjudicate DATs petitions to compel arbitration.
 

 IX. Abstention
 

 The Bickels argue that, in view of the $400,000 Illinois state court judgment described above, the district court abused its discretion by not abstaining from exercising jurisdiction over DATs petition to compel arbitration. The district court observed that this argument was a “slightly modified version” of the Bickels’ unsuccessful argument that the district court was precluded from exercising jurisdiction by reason of the Illinois court’s judgment. 944 F.Supp. at 1022. In addition, the district court held that abstention under
 
 Moses Cone
 
 was not warranted because the Illinois court had not engaged in “substantial proceedings” in entering the default judgment against DAI, compared to the two years of proceedings already completed in the district court in these consolidated cases.
 
 Id.
 
 at 1022-23.
 

 We review a district court’s decision
 
 not
 
 to abstain for abuse of discretion.
 
 Tribune Co. v. Abiola,
 
 66 F.3d 12, 15 (2d Cir. 1995); see
 
 Sheerbonnet, Ltd. v. American Exp. Bank Ltd.,
 
 17 F.3d 46, 48 (2d Cir.), cert. denied, 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 23 (1994). This review is less “rigorous” than that required when a district court
 
 does
 
 abstain, because the district court has “considerably broader discretion” when denying a party’s motion to abstain.
 
 Tribune,
 
 66 F.3d at 15.
 

 The franchisees have failed to articulate any persuasive reason why abstention would be proper in this case. Certainly, as the district court found, the Illinois default judgment, entered without an evidentiary hearing, does not constitute a “substantial” state proceeding warranting abstention under
 
 Moses Cone.
 
 See 460 U.S. at 21-22, 103 S.Ct. at 939-40. We hold that the district court did not abuse its discretion by exercising jurisdiction over DATs petition to compel arbitration of the Bickels’ state-court claims.
 

 
 *-1437
 
 X. Conclusion
 

 We have considered all of the franchisees’ arguments, and they are without merit. We affirm the judgment of the district court.
 

 [1]
 

 . This appeal involves numerous individual cases, each brought by the franchisees from a particular Subway store:
 
 Doctor's Associates, Inc. v. Distajo,
 
 No. 3:94-CV-349;
 
 Doctor's Associates, Inc. v. Drenes,
 
 No. 3:94-CV-511;
 
 Doctor's Associates, Inc. v. Guerrero,
 
 No. 3:94-CV-514;
 
 Doctor's Associates, Inc. v. Youmaran,
 
 No. 3:94-CV-515;
 
 Doctor’s Associates, Inc. v. Shino,
 
 No. 3:94-CV-516;
 
 Doctor's Associates, Inc. v. Loen-necice,
 
 No. 3:94-CV-517;
 
 Doctor’s Associates, Inc. v. Johnson,
 
 No. 3:94 — CV-803;
 
 Doctor’s Associates, Inc. v. Kane,
 
 No. 3:94-CV-948;
 
 Doctor's Associates, Inc. v. Gianinni,
 
 No. 3:94-CV-l 108;
 
 Doctor’s Associates, Inc. v. Rothmund,
 
 No. 3:94-CV-1456;
 
 Doctor’s Associates, Inc. v. Papaleo,
 
 No. 3:94-CV-1457;
 
 Doctor's Associates, Inc. v. Bickel,
 
 No. 95-CV-120;
 
 Doctor's Associates, Inc. v. Kanchwala,
 
 No. 95-CV-1915.
 

 [2]
 

 . The clause provides, in relevant part, that:
 

 [a]ny controversy or claim arising out of or relating to this contract or the breach thereof shall be settled by Arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association at a hearing to be held in Bridgeport, Connecticut, and judgment upon an award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof. The commencement of arbitration proceedings by an aggrieved party to settle disputes arising out of or relating to this contract is a condition precedent to the commencement of legal action by either party....
 

 [3]
 

 . The sublease provides, in relevant part, that:
 

 If at any time during the term of this Sublease, Sublessee shall default in the performance of any of the terms, covenants or conditions of the aforesaid Franchise Agreement ... Sublessor, at its option, may terminate this lease ... and upon such termination, Sublessee shall quit and surrender the leased premises to the Sublessor, but Sublessee shall remain liable for the balance of the rent due as provided in this Sublease.
 

 [4]
 

 . The district court granted DATs petitions to compel arbitration of claims brought by the Bick-els and Kanchwalas in February 1995 and March 1996, respectively.
 

 [5]
 

 . As discussed in Part V below, the franchisees did not submit the issues of unconscionability and failure of the contract to meet their expectations to the district court at that time.
 

 [6]
 

 . Jose Brenes, Wesam and Linda Youmaran, Ronald and Patricia Rothmund, and Michael and Anver Kanchwala and Azim Hemani.
 

 [7]
 

 . Emily and Renato Distajo and Constantine and Milo Lamando, Alvaro and Maria Guerrero, Bruno Giannini, and John Papaleo. DAI dismissed the action against Papaleo, who abandoned his store and ceased operation as a Subway franchisee for financial reasons while the eviction action was pending.
 

 [8]
 

 .Julie and Johnson Shino and Albert and Laylan Yonan, Louis Loenneke and Maty Ann Bookout, Michael Johnson, Gregory and Deborah Kane, and Raymond and Sandra Bickel.
 

 [9]
 

 . Except with respect to the Kanchwalas, both parties agree that the eviction actions were premised, at least in part, on violations of the franchise agreements. We also held in
 
 Distajo I
 
 that waiver could only apply if "DAI was responsible for the eviction proceedings” brought by its leasing companies. 66 F.3d at 457. DAI has since stipulated to responsibility for such actions.
 

 [10]
 

 . We note that this panel includes a member of the panel in
 
 Distajo I.
 

 [11]
 

 . The district court found that in the eviction action against the Kanchwala defendants, DAI claimed only unpaid rent due under the sublease, a nonarbitrable issue. 944 F.Supp. at 1020. The district court correctly held that litigation of non-arbitrable claims does not waive a party's right to arbitrate other, arbitrable claims.
 
 Sweater Bee,
 
 754 F.2d at 463;
 
 Seguros Banvenez, S.A.
 
 v.
 
 S/S Oliver Drescher,
 
 761 F.2d 855, 862 (2d Cir.1985).