SUMMARY ORDER
Plaintiff Fido’s Fences Inc. (“Fido’s”) appeals from the district court’s September 8, 2008 order granting Defendant Canine Fence Company’s (“Canine”) motion for a preliminary injunction. We assume the parties’ familiarity with the facts, procedural history, and specification of issues on appeal, and discuss them only as necessary to explain our decision.
From 1989 until 2008, Fido’s was a licensed dealer of Invisible Fence brand electronic pet containment systems. The systems are manufactured by the Invisible Fence Company, which has owned trademarks for the words “Invisible,” “Invisible Fence,” and “Invisible Fencing” in the area of electronic animal confinement systems for over fifteen years. Canine is the exclusive distributor of Invisible Fence systems in New York. Canine and Fido’s entered into two dealer-distributor agreements (collectively, the “Agreement”) which provided that, in case of termination, Fido’s would immediately discontinue use of all Invisible Fence trademarks.
While the parties dispute the exact date of termination, both sides agree that by May 16, 2008, Canine had terminated the Agreement. On July 11, 2008, Canine moved for an injunction “tailored solely to enjoining [Fido’s] from use of any tele *482 phone numbers previously or currently linked in advertising media to the Invisible Fence® trademark.” By Order dated September 8, 2008, the district court ordered that for a period of 6 months, a third-party automated voice mail service would receive incoming phone calls to Fido’s telephone numbers and play the following automated message in response: “Press 1 for Fido’s Fences; Press 2 for an authorized Invisible Fence Brand Dealer[;] If you wish to hear these options again, press 3.”
We review the grant or denial of a preliminary injunction for abuse of discretion. Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir.2002). “[A] party seeking a preliminary injunction must demonstrate (1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly toward the party requesting the preliminary relief.” Fed. Express Corp. v. Fed. Espresso, Inc., 201 F.3d 168, 173 (2d Cir.2000). Where the injunction sought is mandatory, in that it would alter, rather than maintain, the status quo, the party seeking the injunction must show a “clear” or “substantial” likelihood of success on the merits. Sunward, 362 F.3d at 24. We conclude that the district court did not abuse its discretion in issuing the preliminary injunction here.
In the context of a trademark infringement case brought by a licensor against a former licensee, when “unlawful use [of the trademark] and consumer confusion have been demonstrated, a finding of irreparable harm is automatic.” Church of Scientology Int’l v. Elmira Mission of the Church of Scientology, 794 F.2d 38, 42 (2d Cir.1986). This is because “[a] licensee or franchisee who once possessed authorization to use the trademarks of its licensor or franchisor becomes associated in the public’s mind with the trademark holder.” Id. at 44. In such a case, the need for injunctive relief is “compelling” because “after a license has been revoked, there is an increased danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder.” Sunward, 362 F.3d at 25.
With respect to Canine’s likelihood of success on the merits, the record plainly supports the district court’s issuance of an injunction. Section 16(a) of the Agreement required Fido’s to, inter alia, “immediately discontinue the use of all trade names, service marks, Proprietary Marks, signs and forms of advertising indicative of Invisible Fencing” upon the Agreement’s termination. In light of this expansive language and Fido’s post-termination use of Invisible Fencing marks in online and print advertising, there is a clear likelihood that Canine could successfully show Fido’s to have breached the Agreement. As for irreparable harm, although Canine did not bring a counterclaim for trademark infringement, the consumer confusion rationale we explained in Church of Scientology and Sunward applies with equal force to this case, and Canine’s proof was sufficient for the district court to find irreparable harm.
Until 2008, Fido’s sold no electronic pet containment systems other than the Invisible Fence brand system. The system consists of a transmitter, an animal collar, and underground wiring, of which the transmitter and collar were trademarked Invisible Fence brand products. Each time Fido’s installed an Invisible Fence brand system, it put up a small blue sign with the name and phone number of Fido’s Fences. The signs contained no other telephone numbers. Therefore, if a customer wanted *483 his Invisible Fence brand transmitter or collar serviced, or wanted to purchase another Invisible Fence brand product, and he consulted the sign installed on his lawn, he would have dialed the number for Fido’s, with no knowledge that, after May-2008, Fido’s was no longer an authorized Invisible Fence dealer. This risk was illustrated by the testimony of Ms. Veit, which showed that at least one customer who had previously purchased an Invisible Fence system from Fido’s then purchased a system upgrade from Fido’s without realizing that the upgrade was to a different brand of pet containment system.
Fido’s conduct exacerbated the potential for confusion. After the Agreement was terminated and Canine contacted people who had purchased Invisible Fence brand systems to let them know that Fido’s was no longer an authorized Invisible Fence dealer, Fido’s sent postcards to its customers stating
BE AWARE: The Canine Fence Company (Invisible Fence Brand distributor in Wilton, Connecticut) is currently being sued in Federal Court regarding allegations of Federal antitrust and unfair trade practices. We are strongly advising our customers to disregard any information they may provide and to continue to deal directly with Fido’s Fences Inc. to insure the proper service and maintenance of your pet system.
Because Fido’s was no longer authorized to service the transmitters and collars that make up the Invisible Fence brand system, the encouragement “to deal directly with Fido’s Fences Inc. to insure the proper service and maintenance of your pet system” was affirmatively misleading. Consumers were highly susceptible to confusion in light of this postcard and Fido’s long relationship with Canine. The district court therefore did not abuse its discretion by concluding that Fido’s unauthorized actions irreparably harmed Canine.
This evidence shows that Fido’s argument on appeal that “there is just no way that consumers could possible [sic] associate or view Fido’s Fences’ with Appellee,” is without merit. So is its assertion that the limited injunction issued by the district court threatens it with irreparable harm. Fido’s is no longer an authorized Invisible Fence dealer, and as such it has no right to customers who are looking for Invisible Fence brand products or services. See Sunward, 362 F.3d at 26. Therefore, the district court did not abuse its discretion in failing to order a bond to protect Fido’s. See Doctor’s Assocs., Inc. v. Distajo, 107 F.3d 126, 136 (2d Cir.1997) (a district court has wide discretion to dispense with the bond requirement of Fed.R.Civ.P. 65(c) “where there has been no proof of likelihood of harm”) (internal quotation marks omitted).
We have considered Fido’s other arguments and find them without merit. Accordingly, for the foregoing reasons, the order of the district court is hereby AFFIRMED.